ERIC BEANE (Bar No. 186029)
eric.beane@dlapiper.com
**DLA PIPER LLP (US)**
200 Avenue of the Stars,
Suite 400 North Tower
Los Angeles, California 90067
Tel.:  310.595.3000
Fax:  310.595.3300

DANIEL LAC (Bar No. 294502)
daniel.lac@dlapiper.com
**DLA PIPER LLP (US)**
550 S. Hope St., Suite 2400
Los Angeles, California  90071
Tel:  213.330.7700
Fax:  213.330.7701

Attorneys for Defendant
MATCH GROUP, LLC (erroneously sued as
Tinder, Inc.)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SANFILIPPO, an individual,<br><br>             Plaintiff,<br><br>        v.<br><br>TINDER, INC., a Delaware corporation, and DOES 1 through 20, Inclusive,<br><br>             Defendants. | **CASE NO.  2:18-cv-8372-AB-JEM**<br><br>*[Assigned to Hon. André Birotte, Jr.]*<br><br>**DEFENDANT MATCH GROUP, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS**<br><br>*[Filed concurrently with the (1) Memorandum of Points and Authorities (2) Declaration of Lisa J. Nelson; (3) Declaration of Laurie Braddock; (4) Declaration of Benjamin Setnick; and (5) [Proposed] Order]*<br><br>**Date:      November 30, 2018**<br>**Time:     10:00 a.m.**<br>Crtm.:    7B (Judge André Birotte, Jr.)<br><br>[Removed from the Superior Court of the State of California, County of Los Angeles, Case No. BC718649] |

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

## NOTICE OF MOTION AND MOTION

**TO ALL THE PARTIES AND TO THEIR ATTORNEY(S) OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 30, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7B of the above-entitled Court, located at First Street Courthouse, 350 West First Street, Los Angeles, CA 90012, Defendant Match Group, LLC ("Match")[1], incorrectly named in Plaintiff's Complaint as Tinder, Inc., will and hereby does move this Court for an Order (1) compelling Plaintiff Elizabeth Sanfilippo ("Plaintiff") to arbitrate her claims and (2) dismissing or, in the alternative, staying this action as to all causes of action asserted in the above-captioned lawsuit pending completion of arbitration.

This Motion to Compel Arbitration and Dismiss or Stay Proceedings ("Motion") is based on 9 U.S.C. § 4 and is made on the grounds that each claim asserted by Plaintiff in this action must be arbitrated pursuant to a written agreement to arbitrate entered into by and between Plaintiff and Match Group, Inc., and all parent, related, subsidiary and affiliate entities, which includes Match Group, LLC (a subsidiary of Match Group, Inc.).  Copies of the Mutual Agreement to Arbitrate Claims on an Individual Basis and Summary of the Alternative Dispute Program for California and Alternative Dispute Resolution Program for California applicable to Plaintiff's claims are attached as Exhibits 1-B and 1-C to the Declaration of Lisa J. Nelson, which is being filed concurrently herewith.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the following Memorandum of Points and Authorities and corresponding exhibits; (3) the Declaration of Lisa J. Nelson and its respective exhibits; (4) the Declaration of Laurie Braddock; (5) the Declaration of Benjamin Setnick and its respective exhibits; (6) all records, pleadings and other documents on file in this action; and

---

[1] Without waiving any asserted affirmative defenses, Match may also be referred to as "Defendant" throughout this Motion and the following Memorandum of Points and Authorities.

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS AND MEMORANDUM OF POINTS & AUTHORITIES

1   (7) any other evidence and argument which the Court may consider at or before the

2   date of hearing on this Motion.

3         This Motion is made following the conference of counsel pursuant to L.R. 7-3

4   which took place on October 11, 2018.

5

6    Dated:  October 24, 2018              DLA PIPER LLP (US)

7

8

9                                         By:  /s/  Eric S. Beane
                                               ERIC S. BEANE
10                                              DANIEL LAC

11                                        *Attorneys for Defendant*
                                          *Match Group, LLC (erroneously sued as*
12                                        *Tinder, Inc.)*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS...............................................................................2

    A.    Plaintiff Enters into a Mutual Arbitration Agreement with Match During Her Employment.............................................................................2

    B.    Plaintiff's Allegations and Complaint. .................................................7

III.  ARGUMENT ...................................................................................................10

    A.    The Parties' Mutual Arbitration Agreement Requires Arbitration of Plaintiff's Claims. ..........................................................................10

        1.    The Court Must Compel Arbitration Because the Parties Have Delegated Questions of Arbitrability to the Arbitrator. ...........................................................................10

        2.    The Parties' Mutual Arbitration Agreement Is Valid and Enforceable. ................................................................................13

        3.    Plaintiff's Claims Fall Within the Scope of the Mutual Arbitration Agreement.............................................................13

    B.    This Action Must Be Dismissed in Light of the Parties' Mutual Arbitration Agreement. ..........................................................17

    C.    Alternatively, This Action Should Be Stayed Pending Resolution of Arbitration...........................................................................18

IV.   CONCLUSION ...............................................................................................20

DLA Piper LLP (US)
Los Angeles

- i -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS AND MEMORANDUM OF POINTS & AUTHORITIES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   6 P.3d 669 (Cal. 2000)............................................................................15, 16, 17

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................................ 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ........................................................................... 10, 13, 14

*Beggs Bros. Fruit Co. v. United Farmers Ass'n of Cal.*,
   107 P. 2d 631 (Cal. Ct. App. 1940) ................................................................ 12

*Broughton v. Cigna Healthplans of Cal.*,
   988 P.2d 67 (Cal. 1999).................................................................................... 12

*Burnett v. Macy's West Stores, Inc.*,
   No. 1:11–cv–01277, 2011 WL 4770614 (E.D. Cal. Oct. 7, 2011) ..................... 15

*Bushley v. Credit Suisse First Boston*,
   360 F.3d 1149 (9th Cir. 2004) .......................................................................... 17

*Campos v. DXP Enters., Inc.*,
   No. 8:18-cv-00103-JLS-DFM, 2018 WL 3617885 (C.D. Cal. Mar.
   14, 2018) ......................................................................................................... 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000)............................................................... 13, 14, 15

*Circuit City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002)........................................................................... 12

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962) ............................................................................ 18

*Cole v. Burns Int'l Sec. Servs.*,
   105 F.3d 1465 (D.C. Cir. 1997).......................................................................... 16

*Dees v. Billy*,
   394 F.3d 1290 (9th Cir. 2005) .......................................................................... 17

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

## Table of Authorities Continued

Page(s)

*Elmore v. CVS Pharm., Inc.*,
No. 2:16-cv-05603-ODW(ASx), 2016 WL 6635625 (C.D. Cal. Nov.
9, 2016) ......................................................................................... 11, 13

*Epic Sys. Corp. v. Lewis*,
138 S.Ct. 1612 (2018) ....................................................................... 2, 10

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ....................................................................... 10, 11

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ........................................................................ 17, 18

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .............................................................................. 10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ............................................................................ 18

*Manos v. MTC Fin., Inc.*,
No 8:16-CV-01142-CJC(KESx), 2016 WL 11005392 (C.D. Cal.
Sept. 22, 2016) ................................................................................... 18

*Marchese v. Shearson Hayden Stone, Inc.*,
734 F.2d 414 (9th Cir. 1984) .............................................................. 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ...................................................................... 13, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983) ............................................................................... 14

*Oguejiofor v. Serramonte Nissan*,
No. 3:11-cv-00544 EMC, 2011 WL 3879482 (N.D. Cal. Sept. 2,
2011) .................................................................................................. 12

*United States ex rel. Oliver v. The Parsons Co.*,
195 F.3d 457 (9th Cir. 1999) .............................................................. 11

*Pac. Corporate Grp. Holdings, LLC v. Keck*,
232 Cal. App. 4th 294 (Cal. Ct. App. 2014) ....................................... 11

*Republic of Nicaragua v. Std. Fruit Co.*,
937 F.2d 469 (9th Cir. 1991) .............................................................. 14

- ii -

DLA Piper LLP (US)
Los Angeles

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

## Table of Authorities Continued                                       Page(s)

*Sargon Enters., Inc. v. Browne George Ross LLP*
    15 Cal. App. 5th 749 (Cal. Ct. App. 2017)............................................................. 8

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960) ..................................................................................................... 13

*Vedachalam v. Tata Am. Int'l Corp.*,
    Nos. 07-15504, 08-15521, 339 F. App'x 761 (9th Cir. 2009) ....................... 12, 13

*Warner Bros. Entm't Inc. v. Starline Tours of Hollywood, Inc.*,
    CV 16-02001 SJO (GJSx), 2016 WL 10771309 (C.D. Cal. June 20,
    2016) ............................................................................................................................. 10

*Ziober v. BLB Res., Inc.*,
    839 F.3d 814 (9th Cir. 2016) .................................................................................. 20

**Statutes**

9 U.S.C. § 1 ........................................................................................................................ 12

9 U.S.C § 2 .................................................................................................................. 2, 10

9 U.S.C. § 3 ................................................................................................................. 2, 10

9 U.S.C. § 4 ........................................................................................................... 2, 13, 15

Cal. Civ. Code § 1550 ............................................................................................. 11

California Code of Civil Procedure Section 1280 *et seq* ............................................ 6

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS AND MEMORANDUM OF POINTS & AUTHORITIES

DLA Piper LLP (US)
Los Angeles

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff is a former employee of Tinder, Inc. ("Tinder"), which is no longer an existing corporate entity, and Match Group, LLC ("Match").  During her employment with Match, Plaintiff entered into a Mutual Agreement to Arbitrate Claims on an Individual Basis and Summary of the Alternative Dispute Program for California ("Mutual Arbitration Agreement") with Match Group, Inc. and its related, parent, subsidiary and affiliated entities (collectively, the "Company") and each of those entities' respective successors and assigns.[2]  In doing so, Plaintiff accepted and agreed to arbitrate certain claims, including the very type alleged in this lawsuit, pursuant to Match Group, Inc.'s Alternative Dispute Resolution Program for California ("ADR Program").  Specifically, the Mutual Arbitration Agreement provides that, with limited exceptions as provided for in the Mutual Arbitration Agreement, "all claims or controversies arising out of or in connection with" Plaintiff's "application with, employment with, or termination from," the Company must be arbitrated on an individual basis.

On January 2, 2018, Plaintiff signed the Mutual Arbitration Agreement and consented to its terms, as well as those included in the ADR Program.  Plaintiff continued to work for Match until her termination, which was due to legitimate, business and non-discriminatory reasons, on March 1, 2018.  On August 20, 2018, Plaintiff incorrectly sued Tinder, in clear violation of the terms of the Mutual Arbitration Agreement.

Under the Federal Arbitration Act ("FAA"), which applies to the Mutual Arbitration Agreement, including the ADR Program, courts are directed to treat arbitration agreements as "valid, irrevocable, and enforceable," and to "rigorously"

---

[2] Match is a subsidiary of Match Group, Inc., and is the assignee of Tinder's assets and liabilities following Tinder's merger with and into Match Group, Inc.

- 1 -

DLA PIPER LLP (US)
LOS ANGELES

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

enforce such agreements "according to their terms."  *See* 9 U.S.C. §§ 2, 3 and 4; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  A plain reading of the parties' Mutual Arbitration Agreement shows that "only an arbitrator can interpret [its] scope and application."  Because the Mutual Arbitration Agreement clearly and unambiguously delegates arbitrability to the arbitrator, it is appropriate to compel this dispute, including any issues relating to the arbitrability of Plaintiff's claims, directly to arbitration.  However, even if the Court finds that the Court must determine arbitrability, arbitration is still the proper forum to adjudicate Plaintiff's claims because: (1) the Mutual Arbitration Agreement, including the ADR Program, is valid on its face; and (2) Plaintiff's claims fall under the scope of the Mutual Arbitration Agreement and are arbitrable.

Accordingly, Defendant asks this Court to enforce the parties' Mutual Arbitration Agreement by compelling arbitration and dismissing Plaintiff's claims with prejudice, or in the alternative, staying this case pending resolution of arbitration.

## II.   STATEMENT OF FACTS

### A.   Plaintiff Enters into a Mutual Arbitration Agreement with Match During Her Employment.

Plaintiff is a former employee of Tinder and Match.  (Declaration of Lisa J. Nelson in Support of Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings ("Nelson Decl."), at ¶ 3, filed concurrently herewith.) Specifically, Plaintiff worked as a Brand Marketing Manager for Tinder from September 6, 2016 until July 13, 2017.  *Id.*  Tinder was a subsidiary of Match Group, Inc. from the start of Plaintiff's employment period until July 13, 2017. (Declaration of Laurie Braddock in Support of Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings ("Braddock Decl."), at ¶ 4, filed concurrently herewith.)  On July 13, 2017, Tinder merged with and into Match Group, Inc.  *Id.*  Tinder was incorporated in Delaware, and Match Group, Inc. is a

- 2 -

DLA Piper LLP (US)
Los Angeles

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

1   Delaware corporation.  *Id.*

2        On July 13, 2017, as part of the transactions ancillary to the merger, Match

3   Group, Inc. assigned all of Tinder's assets and liabilities to one of Match Group,

4   Inc.'s subsidiaries, Match.com, L.L.C.  (Braddock Decl., at ¶ 5.)  Shortly thereafter,

5   Match.com, L.L.C. changed its name to Match Group, LLC.  *Id.*  Match remained,

6   and is currently, a subsidiary of Match Group, Inc.  *Id.*  Match also remained, and is

7   currently, the assignee of Tinder's assets and liabilities.  *Id.*

8        Tinder ceased to exist as a separate corporate entity as of July 13, 2017.

9   (Braddock Decl., at ¶ 6; Schedule 13D, SECURITIES AND EXCHANGE COMMISSION,

10   https://www.sec.gov/Archives/edgar/data/1575189/000110465917046540/a17-

11   18264_1sc13d.htm (last visited Oct. 19, 2018)).  The Tinder brand became a

12   division of Match as a result of the merger and assignment.  (Braddock Decl., at

13   ¶ 6.)

14        Pursuant to these transactions, on July 13, 2017, all Tinder employees,

15   including Plaintiff, became employees of Match.com, L.L.C., which then changed

16   its name to Match Group, LLC shortly thereafter.  (Braddock Decl., at ¶ 5.)

17   Following the merger and these related events, Plaintiff worked as a Brand

18   Marketing Manager for Match until her termination on March 1, 2018.  (Nelson

19   Decl., at ¶ 3; *see also* Nelson Decl. Ex. 1-A, Plaintiff's Redacted W-2 ("W-2").)[3]

20        On December 27, 2017, Match Group, Inc. adopted the ADR Program.[4]

21   (Nelson Decl., at ¶ 4.)  During the implementation of the ADR Program, Match

22   provided its California employees, including Plaintiff, with a copy of the Mutual

23

24   _____

   [3] A true and correct copy of Plaintiff's Redacted W-2 is attached as Exhibit 1-A to
25   the Declaration of Lisa J. Nelson, filed concurrently herewith.

26   [4] The Mutual Arbitration Agreement incorporates the ADR Program, and both
documents were presented to Plaintiff for review and acceptance via the DocuSign
27   system at the same time.  (Nelson Decl., at ¶ 6.)  The ADR Program restates and
elaborates on provisions in the Mutual Arbitration Agreement and also sets forth the
parties' consideration.  Accordingly, references to the Mutual Arbitration
28   Agreement herein include the ADR Program unless otherwise specified.

- 3 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

1  Arbitration Agreement and the corresponding ADR Program through DocuSign, an

2  electronic signature management system.  (Nelson Decl., at ¶ 5.)  Match uses the

3  DocuSign electronic signature system as a way to ensure that each individual

4  employee receives certain documents, such as the Mutual Arbitration Agreement

5  and ADR Program, that requires their review and, to the extent they agree to the

6  terms of the documents, allows them to accept the terms via electronic signature.

7  (Nelson Decl., at ¶ 5.)  Once the document is submitted to the employee, the

8  employee has the opportunity to open the document for review.  (Nelson Decl., at

9  ¶ 5.)  When the document, such as the Mutual Arbitration Agreement, is viewed in

10  DocuSign, it contains an area indicating where the employee should sign if he or she

11  agreed to the terms of the agreement. (Nelson Decl., at ¶ 5.)  If the employee

12  accepted the terms of the agreement, the employee would then sign the document by

13  creating an electronic signature and clicking a button in which the employee

14  confirmed his or her acceptance of the document. (Nelson Decl., at ¶ 5.)

15       During her employment with Match, Plaintiff signed the Mutual Arbitration

16  Agreement and accepted its and the ADR Program's terms on January 2, 2018,

17  which is evidenced by her signature in the designated signature portion of the

18  document.  (Nelson Decl., at ¶ 6; Nelson Decl. Ex. 1-B, Mutual Arbitration

19  Agreement.)  Upon her execution and acceptance of the Mutual Arbitration

20  Agreement, which included acceptance of the ADR Program, Plaintiff's signature

21  was assigned a unique identifying code that appears below her signature on the

22  agreement.  (Nelson Decl. Ex. 1-B, Mutual Termination Agreement; Nelson Decl.

23  Ex. 1-C, ADR Program.)  Additionally, during the DocuSign process, Plaintiff was

24  provided with instructions on how to download the document or otherwise obtain

25  soft copies of the Mutual Arbitration Agreement and ADR Program to the extent she

26  wanted them for her records.  (Nelson Decl., at ¶ 6.)

27       The Mutual Arbitration Agreement and ADR Program set forth the

28  Company's policy of arbitrating individual claims and controversies arising from or

- 4 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

in connection with an employee's application with, employment with, or termination from the Company.  (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 1.) The Mutual Arbitration Agreement provides that, except as otherwise provided for, the parties consent to the resolution by arbitration on an individual basis of all claims and controversies arising from or in connection with the Plaintiff's application with, employment with, or termination from the Company.  (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 1.)  The Mutual Arbitration Agreement is "mutual, encompassing all claims the [Plaintiff] may have against the Company or that the Company may have against the [Plaintiff]. . . . ," with limited exceptions.  (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 1.)  The Mutual Arbitration Agreement is broad and expressly covers "claims for discrimination, harassment or retaliation of any kind," "claims for violation of any federal, state or other statute, ordinance, regulation, or common law," and "claims for breach of any contract, express or implied," among others.  (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 1.)  Importantly, the Mutual Arbitration Agreement provides that arbitration is "the parties' exclusive remedy" with respect to any such claims, and that with the exception of class and collective action waivers, "only an arbitrator can interpret the scope and application of" the ADR Program.  (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 4.)

The Mutual Arbitration Agreement is designed to ensure employees such as the Plaintiff are treated fairly and equitable throughout the arbitration process. (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement.)  To that end, the ADR Program contains the following key provisions:

- **Express Acknowledgement of Waiver of Rights:**  By entering into the Mutual Arbitration Agreement under the ADR Program, the Company and Plaintiff each knowingly and voluntarily waived any and all rights that they had under law to a trial before a jury or before a judge in a court of law.  (Nelson Decl. Ex. 1-C, ADR Program at ¶¶ 1, 5.)  Both Plaintiff and the Company each acknowledged

- 5 -

DLA Piper LLP (US)
Los Angeles

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

an understanding that they did not give up any substantive rights.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 5.)

- **Same Applicable Law and Same Remedies:** The arbitration will be adjudicated in accordance with applicable state or federal law that would be applied by a United States District Court in the city where the dispute arose or, if the dispute involves a dispute over a contract, the jurisdiction or venue designated by the contract at issue.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 4.2.)  The arbitrator will apply the same substantive law, with the same statutes of limitations and same remedies that would apply if the claims were brought in a court of law. Nelson Decl. Ex. 1-C, ADR Program at ¶ 4.4.)

- **Clear and Concise Arbitration Process:** The arbitration will be before a single arbitrator in the county in which the dispute arose, and will be administered in accordance with the American Arbitration Association ("AAA") rules or the rules of another ADP provider selected by the parties, and the California Code of Civil Procedure Section 1280 *et seq*.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 6.)

- **Neutral Arbitrator:** The parties will be allowed to select the arbitrator from a neutral list provided by the ADR provider.  In the event the parties cannot agree on an arbitrator, the parties may request a second list of proposed arbitrators.  If no arbitrator is selected after the parties have made strikes on the second list, the ADR provider will appoint an arbitrator.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 7.)

- **Broad Discovery and Motion Practice:** The parties may engage in the full range of discovery that would be available under applicable state or federal law. The arbitrator may consider and grant dispositive motions brought by the parties. (Nelson Decl. Ex. 1-C, ADR Program at ¶¶ 10, 11.)

- **Written Arbitration Award Required:** The arbitrator must provide a written award, citing his or her evidence and reasoning for the award, and the parties

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS AND MEMORANDUM OF POINTS & AUTHORITIES

have the right to appeal such award, subject to the terms of the ADR Program and in accordance with the standards for appellate review set forth in the FAA or applicable state arbitration law.  (Nelson Decl. Ex. 1-C, ADR Program at ¶¶ 13, 14.)

- **Mutual Right to Counsel:** Each party may be represented by an attorney at any arbitration covered by the ADR Program.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 8.)

- **The Company Covers Arbitration Costs:** The Company will pay all costs uniquely attributable to arbitration, including administrative fees and costs of the arbitrator (unless Plaintiff voluntarily opts to pay up to one-half of the fees and expenses).  Plaintiff is only required to pay her own costs (including, without limitation, expert witness fees) and attorneys' fees, if any, unless the arbitrator rules otherwise.  The ADR Program provides that Plaintiff would not be required to pay any fee or cost that she would not be required to pay in a state or federal court action.  The ADR Program does provide that a prevailing party may recover attorneys' fees and costs, if the law applicable to the claims, or any other agreement, provides for it.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 9.)

In consideration for entering into the Mutual Arbitration Agreement, the parties made mutual promises to resolve claims and controversies via individual arbitration.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 16.1.)

To Defendant's knowledge, Plaintiff did not raise any concerns about arbitrating disputes with the Company, or the terms of the Mutual Arbitration Agreement, including ADR Program, at the time that she signed and accepted their terms.  (Nelson Decl., at ¶ 8.)  Further, Plaintiff never revoked her assent to the Mutual Arbitration Agreement during her employment.  (Nelson Decl., at ¶ 9.)

## B.   Plaintiff's Allegations and Complaint.

On August 4, 2017, Nelson, Match's Chief Human Resources ("HR") Officer, interviewed Plaintiff as a witness in the investigation of a claim of harassment made

- 7 -

DLA PIPER LLP (US)
LOS ANGELES

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

by Olivia Auxier against Nate Nesbitt ("Nesbitt").  (Nelson Decl., at ¶ 10.)  Prior to this date, Plaintiff did not directly report any alleged harassment or alleged discrimination by Nesbitt or anyone else to Human Resources.  (Nelson Decl., at ¶ 10.)  Moreover, Human Resources never received a complaint from Plaintiff, either directly or indirectly, regarding any alleged harassment by Steven Liu ("Liu") during her employment.  (Nelson Decl., at ¶ 10.)  The only complaint Match has ever received regarding Liu occurred in December 2017.  (Nelson Decl., at ¶ 10.)  That sole complaint involved a customer service issue and did not in any way involve Plaintiff.  (Nelson Decl., at ¶ 10.)  As such, any purported claims raised by Plaintiff necessarily arose after Tinder's merger into Match Group, Inc. and relate to her employment with Match.[5]  (*See* Nelson Decl., at ¶ 3.)

Following Plaintiff's filing of the instant lawsuit, Match's in-house counsel, Benjamin Setnick, called Plaintiff's attorney, John Belcher, to inquire as to whether Plaintiff would agree to move this dispute to arbitration based on the Mutual Arbitration Agreement and ADR Program.  (Declaration of Benjamin Setnick in Support of Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings ("Setnick Decl."), at ¶ 3, filed concurrently herewith.)  On that call, Mr. Belcher would not tell Mr. Setnick whether Plaintiff would so agree, would not tell Mr. Setnick his position on the applicability of the Mutual Arbitration Agreement, and would not even tell Mr. Setnick whether he had reviewed the Mutual Arbitration Agreement signed by Plaintiff.  (Setnick Decl., at ¶ 3.)  However, Mr. Belcher did tell Mr. Setnick that even if the Mutual Arbitration Agreement applied to Plaintiff's

---

[5] Any argument that Plaintiff's purported claims accrued prior to the merger is of no consequence.  Tinder was a subsidiary of Match Group, Inc. prior to its merger with and into Match Group, Inc. on July 13, 2017.  Through the transactions ancillary to the merger, Match became an assign of Tinder's assets and liabilities.  Accordingly, the Mutual Arbitration Agreement and ADR Program would still apply to any purported, albeit disputed, allegations that Plaintiff claims accrued prior to the merger.  As Tinder was a subsidiary of Match Group, Inc., and Match is an assignee of Tinder's assets and liabilities, Match can rightfully seek to compel arbitration. (*See* Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 1.)

claims, he could force Match to litigate the issue of arbitrability and referred Mr.

Setnick to the case *Sargon Enters., Inc. v. USC*.  (Setnick Decl., at ¶ 3.)  Because

Mr. Belcher would not confirm whether he was aware of the Mutual Arbitration

Agreement, Mr. Setnick offered to send him a copy; in response, Mr. Belcher

provided the email address j@earthlink.net to Mr. Setnick.  (Setnick Decl., at ¶ 3.)

Shortly after that call, Mr. Setnick emailed Mr. Belcher a copy of the Mutual

Arbitration Agreement and ADR Program accepted by Plaintiff.  (Setnick Decl., at ¶

4; Setnick Decl. Ex. 2-A, 9/10/18 Email from Mr. Setnick to Mr. Belcher.)[6]  In that

email, Mr. Setnick informed Plaintiff's counsel that the Mutual Arbitration

Agreement and ADR Program delegated the "issue of scope and arbitrability" to the

arbitrator and requested the parties move the dispute to arbitration.  (Setnick Decl.,

at ¶ 4; Setnick Decl. Ex. 2-A, 9/10/18 Email from Mr. Setnick to Mr. Belcher.)

Mr. Setnick received no response to this email.  (Setnick Decl., at ¶ 4.)  One week

later, Mr. Setnick again contacted Plaintiff's counsel to re-urge the applicability of

arbitration to Plaintiff's claims.  (Setnick Decl., at ¶ 4; Setnick Decl. Ex. 2-B,

9/17/18 Email from Mr. Setnick to Mr. Belcher.)[7]  Mr. Setnick sent this email to

both the j@earthlink.net email address Mr. Belcher provided him and to the

johnbelcher@insuringlaw.com email address listed on the California State Bar

website.  (Setnick Decl., at ¶ 4.)  Mr. Setnick received no response to this second

email. (Setnick Decl., at ¶ 4.)

Accordingly, on September 26, 2018, Defendant filed its Answer to Plaintiff's

Complaint and Affirmative Defenses in the Superior Court of Los Angeles County.

(Def.'s Answer, Dkt. 1, Exhibit E.)  On September 27, 2018, Defendant filed its

---

[6] A true and correct copy of Setnick's September 10, 2018 email to Belcher is
attached as Exhibit 2-A to the Declaration of Benjamin Setnick, filed concurrently
herewith.

[7] A true and correct copy of Setnick's September 17, 2018 email to Belcher is
attached as Exhibit 2-B to the Declaration of Benjamin Setnick, filed concurrently
herewith.

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

1   Notice of Removal and corresponding exhibits and materials in this Court. (Def.'s

2   Notice of Removal, Dkt. 1.) Defendant now brings this Motion to Compel

3   Arbitration and Dismiss or Stay Proceedings ("Motion") based on the parties'

4   Mutual Arbitration Agreement and the Company's ADR Program.

5   ## III.   ARGUMENT

6   ### A.   The Parties' Mutual Arbitration Agreement Requires Arbitration of Plaintiff's Claims.

7   #### 1.   The Court Must Compel Arbitration Because the Parties
8   Have Delegated Questions of Arbitrability to the Arbitrator.

9   The FAA, which governs the Mutual Arbitration Agreement, reflects a

10  "liberal federal policy" favoring arbitration agreements. *AT&T Mobility LLC v.*

11  *Concepcion*, 563 U.S. 333, 339 (2011); *Warner Bros. Entm't Inc. v. Starline Tours*

12  *of Hollywood, Inc.*, No. 2:16-cv-02001-SJO(GJSx), 2016 WL 10771309, at *4 (C.D.

13  Cal. June 20, 2016); *see also* 9 U.S.C § 2. As the Supreme Court recently stated in

14  *Epic Sys. Corp. v. Lewis*, there is a presumption that such agreements should be

15  treated as "valid, irrevocable, and enforceable." 138 S. Ct. 1612, 1621 (citing 9

16  U.S.C § 2). Further, an agreement to arbitrate should be upheld "in accordance with

17  the terms of the agreement." 9 U.S.C. § 3.

18  The question of whether a party has agreed to submit to arbitration a

19  particular dispute, *i.e.*, the "question of arbitrability," is "an issue for judicial

20  determination [u]nless the parties clearly and unmistakably provide otherwise."

21  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *AT&T*

22  *Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also First*

23  *Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946–47 (1995). In this case, the

24  Court should determine whether the parties' intended to delegate arbitrability "by

25  applying ordinary state-law principles that govern the formation of contracts." *First*

26  *Options*, 514 U.S. at 944.

27  Here, the Mutual Arbitration Agreement provides that, aside from the discrete

28  issue of class, consolidated, collective or representative action waiver, "only an

arbitrator can interpret the scope and application of the remainder of the [ADR] Program." (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 4.)  Thus, the Mutual Arbitration Agreement "clearly and unambiguously" requires an arbitrator to interpret the scope and application of the Mutual Arbitration Agreement, *i.e.*, questions of arbitrability.  *First Options*, 514 U.S. 943.  The only remaining question for this Court is whether the parties' Mutual Arbitration Agreement, including the ADR Program, is a valid contract.  *Id.* at 944.

Under California law, a contract requires (1) parties capable of contracting; (2) the parties' consent; (3) a "lawful object;" and (4) sufficient consideration. CAL. CIV. CODE § 1550; *United States ex rel. Oliver v. The Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).  The Mutual Arbitration Agreement meets each one of these elements.

*First*, both Plaintiff and Match are capable of entering into a contract.  The parties willingly entered into the Mutual Arbitration Agreement, and neither Plaintiff nor Match contends that they are or were incapable of contracting.  *See Elmore v. CVS Pharm., Inc.*, No. 2:16-cv-05603-ODW(ASx), 2016 WL 6635625, at *3 (C.D. Cal. Nov. 9, 2016) (finding "no question" that plaintiff employee was capable of entering into an arbitration agreement with defendant employer where plaintiff signed an acknowledgement to arbitrate, declined to opt out of arbitration and continued to work for defendant after signing).

*Second*, both Plaintiff and Match consented to be bound by the Mutual Arbitration Agreement. "The manifestation of mutual consent is generally achieved through the process of offer and acceptance," and "is determined under an objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Pac. Corporate Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 309 (Cal. Ct. App. 2014) (internal citations and quotations omitted).  Here, Match provided the Mutual Arbitration Agreement to Plaintiff, and Plaintiff

- 11 -

DLA PIPER LLP (US)
LOS ANGELES

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

manifested her assent by signing the Mutual Arbitration Agreement and continuing to work for Match. Meanwhile, Match manifested its assent by upholding the terms of the Mutual Arbitration Agreement during and after Plaintiff's employment.

*Third*, there is no question that arbitration is a "lawful object." And enforcing an arbitration agreement is not only "lawful"; it is "strongly favor[ed]" by federal and California law and public policy. 9 U.S.C. § 1; *Broughton v. Cigna Healthplans of Cal.*, 988 P.2d 67, 82 (Cal. 1999).

*Finally*, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provides sufficient consideration. *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). The Company, which includes subsidiary Match, is required to arbitrate any dispute between the parties (aside from the issue of class, consolidated, collective or representative action waiver and other discrete carve outs not relevant to this litigation). (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 1; Nelson Decl. Ex. 1-C, ADR Program at ¶¶ 2, 3.) This includes those in which Match normally would be the plaintiff. (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 1.) "Under California case law, a *mutual* promise to arbitrate is sufficient to establish consideration." *Oguejiofor v. Serramonte Nissan*, No. 3:11-cv-00544 EMC, 2011 WL 3879482, at *3 (N.D. Cal. Sept. 2, 2011) (emphasis in original) (citations omitted); *see also Beggs Bros. Fruit Co. v. United Farmers Ass'n of Cal.*, 107 P. 2d 631, 633 (Cal. Ct. App. 1940) (finding the arbitration agreement was mutual because each party to the agreement "made the same promise to each and every other party," and "such promise constituted a consideration").[8]

Because the Mutual Arbitration Agreement meets the requirements for a valid

---

[8] Plaintiff received additional consideration in the form of her continued employment with Match. (Nelson Decl. Ex. 1-C, ADR Program at ¶ 16.1.) The promise of continued employment alone may be sufficient consideration to support an at-will employee's promise to submit claims to arbitration. *Vedachalam v. Tata Am. Int'l Corp.*, Nos. 07-15504, 08-15521, 339 F. App'x 761, 763 (9th Cir. 2009).

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

1    contract under California law, Defendant requests that the Court send this dispute to

2    arbitration so that an arbitrator may determine any questions of arbitrability related

3    to the Mutual Arbitration Agreement, including the ADR Program, or Plaintiff's

4    claims. *See Elmore*, 2016 WL 6635625, at *3 (holding that the pertinent arbitration

5    agreement "clearly and unmistakably demonstrated the parties' intent to arbitrate the

6    issue of arbitrability where the agreement provided that the issues to be arbitrated

7    included disputes arising out of or relating to the validity, enforceability or breach of

8    the agreement).[9]

9              **2.    The Parties' Mutual Arbitration Agreement Is Valid and Enforceable.**

10             Even if this Court finds delegation of arbitrability to the arbitrator is not

11   "clear" and "unambiguous" under the Mutual Arbitration Agreement, the Court still

12   must compel arbitration because: (1) a valid agreement to arbitrate exists and (2) the

13   parties' dispute falls within the scope of that arbitration agreement.  *Campos v. DXP*

14   *Enters., Inc.*, No. 8:18-cv-00103-JLS-DFM, 2018 WL 3617885, at *4 (C.D. Cal.

15   Mar. 14, 2018); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130

16   (9th Cir. 2000); *see also* 9 U.S.C. § 4.

17             "[A]rbitration is a matter of contract," so a valid agreement is a gating issue to

18   arbitration.  *AT&T Techs.*, 475 U.S. at 648 (quoting *United Steelworkers of Am. v.*

19   *Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).  As discussed in Section

20   III.A.1 of this Motion, the Mutual Arbitration Agreement meets all elements of a

21   valid contract under California law.  Accordingly, the first prong of the analysis has

22   been satisfied.

23             **3.    Plaintiff's Claims Fall Within the Scope of the Mutual Arbitration Agreement.**

24

25             Arbitration is also proper because Plaintiff's claims fall within the scope of

26

27   _____

     [9] Additionally, because the claims in this lawsuit arise out of Plaintiff's employment

28   with Match, the assertion of arbitrability cannot be considered wholly groundless. *Id.*

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

1  the Mutual Arbitration Agreement, and there is no statute, regulation or policy that

2  renders the claims nonarbitrable.  *See Mitsubishi Motors Corp. v. Soler Chrysler-*

3  *Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  In fact, the Ninth Circuit has directed

4  courts to "be cognizant of the [FAA]'s federal policy favoring arbitration

5  agreements:

6              The Arbitration Act establishes that, as a matter of federal law,
   any doubts concerning the scope of arbitrable issues should be
7              resolved in favor of arbitration, whether the problem at hand is
   the construction of the contract language itself or an allegation of
8              waiver, delay, or a like defense to arbitrability."

9  *Chiron Corp.*, 207 F.3d at 1131 (citing *Moses H. Cone Mem'l Hosp. v. Mercury*

10  *Const. Corp.*, 460 U.S. 1, 24–25 (1983)).  As such, a court's role is "strictly

11  limited," "leaving the merits of the claim and any defenses to the arbitrator."  *Id.*

12  (citing *Republic of Nicaragua v. Std. Fruit Co.,* 937 F.2d 469, 478 (9th Cir. 1991)).

13      It is well settled that "a party cannot be required to submit to arbitration any

14  dispute which he has not agreed so to submit." *AT&T Techs.,* 475 U.S. at 648.

15  However, a court "will not ordinarily except a controversy from coverage of a valid

16  arbitration clause unless it may be said with positive assurance that the arbitration

17  clause is not susceptible of an interpretation that covers the asserted dispute."

18  *Marchese v. Shearson Hayden Stone, Inc.,* 734 F.2d 414, 419 (9th Cir. 1984)

19  (quotation omitted).

20      Here, the Mutual Arbitration Agreement clearly "covers the asserted dispute"

21  in Plaintiff's Complaint.  The Mutual Arbitration Agreement requires arbitration of

22  "all claims or controversies arising out of or in connection with [Plaintiff's]

23  application with, employment with, or termination from," the Company.  (Nelson

24  Decl. Ex.1-B, Mutual Arbitration Agreement at ¶ 1.)  The Mutual Arbitration

25  Agreement enumerates the types of claims it covers, including but not limited to:

26  "claims for discrimination, harassment or retaliation of any kind;" "claims for

27  violation of any federal, state or other statute, ordinance, regulation, or common

28  law;" and "claims for breach of any contract, express or implied."  (Nelson Decl.

- 14 -

DLA PIPER LLP (US)
LOS ANGELES

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

Ex.1-B, Mutual Arbitration Agreement at ¶ 1.)  Plaintiff alleges these very claims in her Complaint, including claims for:  (1) sexual harassment and sex discrimination; (2) wrongful termination in violation of California and federal law and public policy; (3) retaliation in violation of the California Fair Employment and Housing Act, federal law and public policy; (4) failure to prevent discrimination and harassment; and (5) breach of implied covenant of good faith and fair dealing.  (Pl.'s Compl., Dkt. 1, Ex. A, at ¶¶ 30-71.)  Thus, there is no question that Plaintiff's claims (a) arise out of and are in connection with the Plaintiff's employment with, or termination from, Match and (b) allege violations of federal, state and/or common law.[10]

Given that each and every one of Plaintiff's claims falls within the broad scope of the Mutual Arbitration Agreement, the claims are unquestionably covered claims. 9 U.S.C. § 4.  Accordingly, this dispute must be resolved in arbitration.  *See Chiron Corp.*, 207 F.3d at 1131 (holding that where a dispute unquestionably arises out of an agreement to arbitrate, there is "no place" for discretion because the dispute must be arbitrated).

Plaintiff's claims are also arbitrable because she will have a chance to vindicate her FEHA statutory claims via arbitration.  The FAA, which governs the Mutual Arbitration Agreement, "generally preempts state legislation that would restrict the enforcement of arbitration agreements."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 679 (Cal. 2000).  However, FEHA is a statutory right "established for a public reason," and thus an arbitration agreement covering FEHA statutory rights must meet certain requirements.  *Burnett v. Macy's West Stores, Inc.*, No. 1:11–cv–01277, 2011 WL 4770614, at *4 (E.D. Cal. Oct. 7, 2011) (citing *Armendariz*, 6 P.3d at 680).  Arbitration of FEHA statutory claims is

---

[10] In addition, none of Plaintiff's claims are exempt from arbitration in accordance with the terms of the ADR Program.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 3.)

- 15 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS AND MEMORANDUM OF POINTS & AUTHORITIES

permissible where:  (1) the arbitration agreement provides for neutral arbitrators;

(2) it provides for more than minimal discovery; (3) it requires a written award;

(4) it provides for all of the types of relief that would otherwise be available in

court; and (5) it does not require employees to pay either unreasonable costs or any

arbitrators' fees or expenses as a condition of access to the arbitration

forum.  *Armendariz*, 6 P.3d at 682.  If these requirements are met, arbitration is

proper because an employee "effectively may vindicate" her statutory cause of

action in arbitration.  *See id.* (citing *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465,

1482 (D.C. Cir. 1997)).

Here, Plaintiff's FEHA claims are arbitrable because the Mutual Arbitration

Agreement satisfies the *Armendariz* standard.  The Mutual Arbitration Agreement

provides for a neutral arbitrator.  Under the Mutual Arbitration Agreement, the ADR

provider will provide the parties with a list of proposed neutral arbitrators.  (Nelson

Decl. Ex.1-C, ADR Program at ¶ 7.)  The parties will have an opportunity to strike

arbitrators they do not want to hear the dispute.  (Nelson Decl. Ex. 1-C, ADR

Program at ¶ 7.)  Once they have narrowed their options, or if the parties cannot

agree on any options after being presented with two different lists of arbitrators, the

ADR provider will select the neutral arbitrator.  (Nelson Decl. Ex. 1-C, ADR

Program at ¶ 7.)  The Mutual Arbitration Agreement also provides for more than

minimal discovery.  The parties are entitled to "engage in the full range of discovery

that would be available under applicable state or federal law."  (Nelson Decl. Ex. 1-

C, ADR Program at ¶ 10.)  The Mutual Arbitration Agreement requires the

arbitrator's award to be in writing, "with reasons given and evidence cited for the

award," and allows the parties the right to appeal the arbitrator's decision in a court

of law, subject to the limitations in the ADR Program.  (Nelson Decl. Ex. 1-C, ADR

Program at ¶¶ 13, 14.)  It further requires that the arbitrator apply the "same

substantive law, with the same statutes of limitations and same remedies that would

apply if the claims were brought in a court of law."  (Nelson Decl. Ex. 1-C, ADR

- 16 -

Program at ¶ 4.4.)  In addition, the Mutual Arbitration Agreement does not require Plaintiff to pay either unreasonable costs or the arbitrator's fees and expenses as a condition to arbitrate.  The Company, not Plaintiff, is required to pay all costs to enter the arbitration forum, including administrative fees and costs of the arbitrator.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 9.)  Plaintiff is only required to pay her own costs and attorneys' fees (unless the arbitrator rules otherwise or the arbitration involves fee-shifting statutes or the Plaintiff voluntarily opts to pay up to one-half of the fees and expenses of arbitration).  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 9.)

The Mutual Arbitration Agreement contains other provisions that go well beyond the minimum criteria in *Armendariz*.  For instance, the arbitrator can consider and grant dispositive motions under applicable federal or state laws governing such motions.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 11.)  And arbitration will be in the county where the Plaintiff worked at the time the dispute arose, at a site mutually agreed upon by the parties, which provides an advantage to employees like Plaintiff.  (Nelson Decl. Ex. 1-C, ADR Program at ¶ 12.)  As such, the arbitration program in the Mutual Arbitration Agreement exceeds the requirements under *Armendariz* and guarantees that Plaintiff will be able to fully litigate her FEHA statutory rights in arbitration.

**B.    This Action Must Be Dismissed in Light of the Parties' Mutual Arbitration Agreement.**

Because the parties have agreed to arbitrate all claims arising from or in connection to Plaintiff's employment with Match, including the claims in Plaintiff's Complaint, this action must be dismissed with prejudice. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 88–89 (2000) (upholding lower court's order compelling the parties to arbitration and dismissing plaintiffs' claims with prejudice).  The Ninth Circuit has repeatedly held that courts in this Circuit have discretion to dismiss an underlying action rather than stay it. *See, e.g., Dees v. Billy*,

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS AND MEMORANDUM OF POINTS & AUTHORITIES

394 F.3d 1290, 1292 (9th Cir. 2005) (discussing a district court order in another Ninth Circuit case where the court compelled arbitration and dismissed the district court action without prejudice); *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004) (discussing dismissal procedure in *Green Tree*). Dismissal is especially appropriate where all claims are subject to arbitration. *See Green Tree*, 531 U.S. at 83.

Here, each and every one of Plaintiff's claims falls under the terms of the Mutual Arbitration Agreement. (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 1; Pl.'s Compl., Dkt. 1, Ex. A.) Once this dispute is sent to arbitration, no further claims will remain before this Court. Accordingly, dismissal of this litigation is both proper and more expedient than granting a stay pending resolution of arbitration.

### C. Alternatively, This Action Should Be Stayed Pending Resolution of Arbitration.

In the alternative, if this Court opts not to dismiss this action, at a minimum this action should be stayed pending the termination of arbitration.

The power to stay proceedings is incidental to the power inherent in every court to control its own docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Staying a case "calls for an exercise of sound discretion" and a weighing of "competing interests." *Manos v. MTC Fin., Inc.*, No 8:16-CV-01142-CJC(KESx), 2016 WL 11005392, at *1 (C.D. Cal. Sept. 22, 2016) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). Among those interests are: (1) the orderly course of justice "measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay;" (2) the hardship or inequity that a party may suffer in being required to go forward; and (3) the possible damage that may result from granting a stay. *See CMAX, Inc.,* 300 F.3d at 268.

All three factors weigh in favor of a stay here.

- 18 -

DLA Piper LLP (US)
Los Angeles

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS AND MEMORANDUM OF POINTS & AUTHORITIES

*First*, staying this case pending completion of arbitration would substantially simplify the issues related to this case.  In fact, staying this case would allow the parties to resolve the entire dispute at hand.  All of Plaintiff's claims are covered by and subject to the Mutual Arbitration Agreement.  If the parties arbitrate Plaintiff's claims, it would obviate the need for future litigation in this Court.  In addition, the choice of law in the Mutual Arbitration Agreement will streamline the dispute resolution process.  Under the Mutual Arbitration Agreement, arbitration proceedings will be subject to the governing law of the state or federal law for the jurisdiction where Plaintiff was employed when the dispute arose.  (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 2.)  In this case, Plaintiff was a resident of Los Angeles, California at the time her allegations arose.  (Pl.'s Compl., Dkt. 1, Ex. A at ¶¶ 1, 7.)  Accordingly, during arbitration, Plaintiff's claims will be governed by applicable California and/or federal law, just as they would if she were in a judicial forum.

*Second*, it would be inequitable not to grant a stay of proceedings during arbitration.  The parties agreed to arbitrate all claims arising out of Plaintiff's employment with or termination from the Company, which includes subsidiary Match, with limited carve outs not applicable to this action.  (Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement at ¶ 1.)  Not only is the Mutual Arbitration Agreement valid, but it remains in effect.  (Nelson Decl., at ¶ 9.)  By seeking relief in a court of law, Plaintiff is in clear breach of the Mutual Arbitration Agreement, and Match has no immediate relief.  Further, if this action is not stayed pending resolution of arbitration, the parties will be fighting in two different fora, which will be wasteful for both the parties and this Court.  A stay would preserve judicial economy and resources and allow the parties to resolve their dispute in an efficient manner.

*Third*, Plaintiff will not be damaged if she is compelled to arbitrate her claims.  Plaintiff will be entitled to pursue the same substantive rights in arbitration

- 19 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS
AND MEMORANDUM OF POINTS & AUTHORITIES

as she would in state or federal court.  Indeed, by agreeing to arbitrate a claim, "a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Mitsubishi Motors Corp.*, 473 U.S. at 628; *see also Ziober v. BLB Res., Inc.*, 839 F.3d 814, 819–20 (9th Cir. 2016) (holding that the parties' arbitration agreement did not require a party to give up any substantive rights) (internal citations omitted).  If anything, arbitrating this dispute may be more expedient than resolving it through judicial action because the parties have already agreed to the rules governing arbitration.  Accordingly, to the extent the Court finds that dismissal is not appropriate, a stay would not be detrimental to Plaintiff if this action is suspended until arbitration concludes.

## IV.    CONCLUSION

During Plaintiff's employment with Match, the parties clearly and unequivocally agreed to arbitrate any claims arising from or in connection with Plaintiff's employment with the Company.  The Court should uphold the parties' valid agreement to arbitrate by compelling arbitration of all claims asserted in Plaintiff's Complaint, dismissing this action with prejudice, or in the alternative, staying this action pending resolution of arbitration.


Dated:  October 24, 2018         DLA PIPER LLP (US)



By:  /s/  Eric S. Beane
      ERIC S. BEANE
      DANIEL LAC

***Attorneys for Defendant***
***Match Group, LLC (erroneously sued as Tinder, Inc.)***

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS AND MEMORANDUM OF POINTS & AUTHORITIES