1  ERIC BEANE (Bar No. 186029)
   Eric.beane@dlapiper.com
2  **DLA PIPER LLP (US)**
   200 Avenue of the Stars,
3  Suite 400 North Tower
   Los Angeles, California 90067
4  Tel.:  310.595.3000
   Fax:  310.595.3300
5
   DANIEL LAC (Bar No. 294502)
6  Daniel.lac@dlapiper.com
   **DLA PIPER LLP (US)**
7  550 S. Hope St., Suite 2400
   Los Angeles, California  90071-2678
8  Tel: 213.330.7700
   Fax: 213.330.7701
9
   Attorneys for Defendant
10 MATCH GROUP, LLC (erroneously sued as
   Tinder, Inc.)
11

12            **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14

15 | ELIZABETH SANFILIPPO, an | CASE NO. 2:18-cv-8372-AB-JEM |
   individual,

16                                    **DECLARATION OF LISA J.**
              Plaintiff,             **NELSON IN SUPPORT OF**
17                                    **DEFENDANT MATCH GROUP,**
        v.                            **LLC'S MOTION TO COMPEL**
18                                    **ARBITRATION AND DISMISS OR**
   TINDER, INC., a Delaware           **STAY PROCEEDINGS**
19 corporation, and DOES 1 through 20,
   Inclusive,                         Date:     November 30, 2018
20                                    Time:     10:00 a.m.
              Defendants.             Crtm.:     7B (Judge André Birotte, Jr.)
21

22                                    [Removed from the Superior Court of the
                                      State of California, County of Los
23                                    Angeles, Case No. BC718649]

24

25

26

27

28

DLA PIPER LLP (US)
  LOS ANGELES

---

DECLARATION OF LISA J. NELSON IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS OR STAY PROCEEDINGS

I, Lisa J. Nelson, declare and state as follows:

1.      I am the Chief HR Officer for Match Group, LLC ("Match").  I submit this Declaration in support of Match's Motion to Compel Arbitration and Dismiss or Stay Proceedings.  I am over the age of 18 years, of sound mind, and duly competent to make this Declaration.  I have personal knowledge of the facts set forth in this Declaration and if called as a witness, could and would competently testify hereto.

2.      In my role as Chief HR Officer for Match, I am familiar with the above-captioned lawsuit filed by former Match employee, Plaintiff Elizabeth Sanfilippo.  In my role as Chief HR Officer for Match, I am also familiar with and am a custodian of records for Match's human resources employment records, including the records of Ms. Sanfilippo.

3.      According to Match's human resources employment records, Ms. Sanfilippo worked as a Brand Marketing Manager for Tinder from September 6, 2016 until July 13, 2017.  Following the merger of Tinder with and into Match Group, Inc. on July 13, 2017, Ms. Sanfilippo became an employee of Match.com, L.L.C., which then changed its name to Match Group, LLC shortly thereafter.   Ms. Sanfilippo continued to work for Match until her termination on March 1, 2018.  A true and correct redacted copy of the W-2 issued by Match to Ms. Sanfilippo for 2017 is attached hereto as Exhibit 1-A.  The copy of the W-2 issued to Ms. Sanfilippo, of which a redacted version is attached hereto as Exhibit 1-A, was made in the regular and ordinary course of Match's business at or near the time of the acts, conditions or events recorded, by me or other employees of Match with knowledge of such acts, conditions or events, and the copy was kept in the course of Match's regularly conducted business.

4.      In my role as Chief HR Officer at Match, I am also knowledgeable about Match Group Inc.'s Alternative Dispute Program for California ("ADR

DLA PIPER LLP (US)
LOS ANGELES

DECLARATION OF LISA J. NELSON IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS

Program"), which was adopted on December 27, 2017.

5.     During the implementation of the ADR Program, Match provided its California employees, including Ms. Sanfilippo, with a copy of the Mutual Arbitration Agreement and the corresponding ADR Program through DocuSign, an electronic signature management system.  Match uses the DocuSign electronic signature system as a way to ensure that each individual employee receives certain documents, such as the Mutual Arbitration Agreement and ADR Program, that requires their review and, to the extent they agree to the terms of the documents, allows them to accept the terms via electronic signature.  Once the document is submitted to the employee, the employee has the opportunity to open the document for review.  When the document, such as the Mutual Arbitration Agreement, is viewed in DocuSign, it contains an area indicating where the employee should sign if he or she agreed to the terms of the agreement.  If the employee accepted the terms of the agreement, the employee would then sign the document by creating an electronic signature and clicking a button in which the employee confirmed his or her acceptance of the document.

6.     During her employment with Match, Ms. Sanfilippo signed the Mutual Arbitration Agreement and accepted its terms, including acceptance of the ADR Program, on January 2, 2018, which is evidenced by her signature in the designated signature portion of the document.  Upon her execution and acceptance of the Mutual Arbitration Agreement, which included acceptance of the ADR Program, Ms. Sanfilippo's signature was assigned a unique identifying code that appears below her signature on the Mutual Arbitration Agreement.  Additionally, during the DocuSign process, Ms. Sanfilippo was provided with instructions on how to download the document or otherwise obtain soft copies of the Mutual Arbitration Agreement and ADR Program to the extent she wanted them for her records.  Further, the Mutual Arbitration Agreement incorporates the ADR Program, and

both documents were presented to Ms. Sanfilippo for review and acceptance via the DocuSign system at the same time.

7.    A true and correct copy of the Mutual Arbitration Agreement and the ADR Program accepted by Ms. Sanfilippo, are attached hereto as Exhibits 1-B and 1-C, respectively.  Copies of the documents in Exhibits 1-B and 1-C were made in the regular and ordinary course of Match's business at or near the time of the acts, conditions or events recorded, by me or other employees of Match with knowledge of such acts, conditions or events, and these copies were kept in the course of Match's regularly conducted business.

8.    To Match's knowledge, Ms. Sanfilippo did not raise any concerns about arbitrating disputes with the Company or to the terms of the Mutual Arbitration Agreement, including the ADR Program, at the time that she signed and accepted their terms.

9.    Ms. Sanfilippo never revoked her assent to the Mutual Arbitration Agreement during her employment.  The Mutual Arbitration Agreement remains in effect.

10.    As Chief HR Officer, I am also responsible for conducting or supervising investigations regarding workplace complaints.  On August 4, 2017, I interviewed Ms. Sanfilippo as a witness in my investigation of a claim of harassment made by Olivia Auxier against Nate Nesbitt ("Nesbitt").  Prior to this date, Ms. Sanfilippo did not directly report any alleged harassment or alleged discrimination by Nesbitt or anyone else to Human Resources.  Moreover, Human Resources never received a complaint from Ms. Sanfilippo, either directly or indirectly regarding any alleged harassment by Steven Liu ("Liu") during her employment.  The only complaint Match has ever received regarding Liu occurred in December 2017.  That sole complaint involved a customer service issue and did not in any way involve Ms. Sanfilippo.

DECLARATION OF LISA J. NELSON IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS

1     I declare under penalty of perjury under the laws of the United States of

2  America and the State of California that the foregoing is true and correct.

3

4     Executed on this 23rd day of October, 2018, at Dallas, Texas.

5

6     _____

7     Lisa J. Nelson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

DECLARATION OF LISA J. NELSON IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS OR STAY PROCEEDINGS

# Exhibit 1-A

**ADP**

# 2017 W-2 and EARNINGS SUMMARY

## W-2 Employee Reference Copy

Wage and Tax Statement **2017**

OMB No. 1545-0008

Copy C for employee's records.

| d Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| REDACTED | | | REDACTED |

c  Employer's name, address, and ZIP code

MATCH GROUP LLC
8750 N CTRL EXP STE 1400
DALLAS TX 75231

REDACTED

e/f Employee's name, address, and ZIP code

ELIZABETH SANFILIPPO

REDACTED

| b Employer's FED ID number REDACTED | a Employee's SSA number REDACTED |
|---|---|
| 1 Wages, tips, other comp. REDACTED | 2 Federal income tax withheld REDACTED |
| 3 Social security wages REDACTED | 4 Social security withheld REDACTED |
| 5 Medicare wages and tips REDACTED | 6 Medicare tax withheld REDACTED |
| 7 Social security tips | 8 Allocated tips |
| 9 Verification Code REDACTED | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 RED___REDACTED |
| 14 Other REDACTED | 12b |
| | 12c ___REDACTED |
| | 13 Stat emp Ret. plan 3rd party sick pay REDACTED |
| 15 State Employer's state ID no. REDACTED | 16 State wages, tips, etc. REDACTED |
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

---

This blue Earnings Summary section is included with your W-2 to help describe portions in more detail. The reverse side includes general information that you may also find helpful.

**1. The following information reflects your final 2017 pay stub plus any adjustments submitted by your employer.**

| Gross Pay | REDACTED | Social Security Tax Withheld Box 4 of W-2 | REDACTED | CA. State Income Tax Box 17 of W-2 | REDACTED |
|---|---|---|---|---|---|
| Fed. Income Tax Withheld Box 2 of W-2 | | Medicare Tax Withheld Box 6 of W-2 | | SUI/SDI Box 14 of W-2 | |

**2. Your Gross Pay was adjusted as follows to produce your W-2 Statement.**

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | CA. State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | | | | |
| Plus GTL (C-Box 12) | | | | |
| Less 401(k) (D-Box 12) | REDACTED | | | |
| Less Other Cafe 125 | | | | |
| Wages Over Limit | | | | |
| Reported W-2 Wages | | | | |

**3. Employee W-4 Profile.** To change your Employee W-4 Profile Information, file a new W-4 with your payroll dept.

ELIZABETH SANFILIPPO

REDACTED

Social Security Number: REDACTED
Taxable Marital Status:

Exemptions/Allowances:
FEDERAL: REDACTED
STATE:

© 2017 ADP, LLC

---

| 1 Wages, tips, other comp. REDACTED | 2 Federal income tax withheld REDACTED |
|---|---|
| 3 Social security wages REDACTED | 4 Social security withheld REDACTED |
| 5 Medicare wages and tips REDACTED | 6 Medicare tax withheld REDACTED |

| d Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| REDACTED | | | REDACT' REDAC' |

c  Employer's name, address, and ZIP code

MATCH GROUP LLC
8750 N CTRL EXP STE 1400
DALLAS TX 75231

| b Employer's FED ID number REDACTED | a Employee's SSA number REDACTED |
|---|---|
| 7 Social security tips | 8 Allocated tips |
| 9 Verification Code REDACTED | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 RED___REDACTED |
| 14 Other REDACTED | 12b REC |
| | 12c REDAC |
| | 12d REDAC |
| | 13 Stat emp Ret. plan 3rd party sick pay REDACTED |

e/f Employee's name, address, and ZIP code

ELIZABETH SANFILIPPO

REDACTED

| 15 State Employer's state ID no. REDACTED | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax REDACTED | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

## W-2 Federal Filing Copy

Wage and Tax Statement **2017**

OMB No. 1545-0008

Copy B to be filed with employee's Federal Income Tax Return.

---

| 1 Wages, tips, other comp. REDACTED | 2 Federal income tax withheld REDACTED |
|---|---|
| 3 Social security wages REDACTED | 4 Social security withheld REDACTED |
| 5 Medicare wages and tips REDACTED | 6 Medicare tax withheld REDACTED |

| d Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| REDACTED | | | REDAC1 REDAC' |

c  Employer's name, address, and ZIP code

MATCH GROUP LLC
8750 N CTRL EXP STE 1400
DALLAS TX 75231

| b Employer's FED ID number REDACTED | a Employee's SSA number REDACTED |
|---|---|
| 7 Social security tips | 8 Allocated tips |
| 9 Verification Code | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a REC ___REDACTED |
| 14 Other REDACTED | 12b REC |
| | 12c REC ___REDACTED |
| | 12d REDACTED |
| | 13 Stat emp Ret. plan 3rd party sick pay REDACTED |

e/f Employee's name, address and ZIP code

ELIZABETH SANFILIPPO

REDACTED

| 15 State Employer's state ID no. REDACTED | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

## W-2 CA.State Reference Copy

Wage and Tax Statement **2017**

OMB No. 1545-0008

Copy 2 to be filed with employee's State Income Tax Return.

---

| 1 Wages, tips, other comp. REDACTED | 2 Federal income tax withheld REDACTED |
|---|---|
| 3 Social security wages REDACTED | 4 Social security withheld 7 REDACTED |
| 5 Medicare wages and tips REDACTED | 6 Medicare tax withheld |

| d Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 1 REDACTED | | | REDAC' |

c  Employer's name, address, and ZIP code

MATCH GROUP LLC

| b Employer's FED ID number REDACTED | a Employee's SSA number REDACTED |
|---|---|
| 7 Social security tips | 8 Allocated tips |
| 9 Verification Code | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a ___REDACTED |
| 14 Other REDACTED | 12b ___REDACTED |
| | 12c ___REDACTED |
| | 12d REDAC' ___REDACTED |
| | 13 Stat emp Ret. plan 3rd party sick pay REDACTED |

e/f Employee's name, address, and ZIP code

ELIZABETH SANFILIPPO

REDACTED

| 15 State Employer's state ID no. REDACTED | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

## W-2 CA.State Filing Copy

Wage and Tax Statement **2017**

OMB No. 1545-0008

Copy 2 to be filed with employee's State Income Tax Return.

Exhibit 1-A, Page 5

# Exhibit 1-B

DocuSign Envelope ID: 74B3E495-6C21-4E43-B36A-D452E66F2A3A

## MUTUAL AGREEMENT TO ARBITRATE CLAIMS ON AN INDIVIDUAL BASIS AND
## SUMMARY OF THE ALTERNATIVE DISPUTE PROGRAM FOR CALIFORNIA

**A Better Way to Resolve Disputes**

We understand that problems can occur even in the best workplaces.    In recognition of the fact that differences may arise between the Company and the undersigned ("Associate"), and in recognition of the fact that resolution of any differences in the courts is rarely time or cost effective for either party, the Company has instituted an Alternative Dispute Resolution Program for California (the "Program"), with an effective date of February 1st, 2018.  In connection with the Program, the Company and the Associate each agree to enter into this Mutual Agreement to Arbitrate Claims on an Individual Basis ("Agreement") to gain the benefits of a speedy, impartial and cost-effective dispute resolution procedure.  This Agreement also contains a summary of certain of the Program terms.

1.    **Agreement to Arbitrate; Claims Covered by Agreement**  The parties hereto agree that all references to the "Company" in this Agreement will include Match Group, Inc., and all of its related, subsidiary and affiliated entities, and the former, current and future officers, directors and employees of all such entities; all benefit plans and their fiduciaries and administrators; and all successors and assigns of these individuals and entities. Except as provided in Section 3 of the Program or as otherwise required by law, the Company and the Associate hereby consent to the resolution by arbitration on an individual basis of all claims or controversies arising out of or in connection with Associate's application with, employment with, or termination from, the Company. The Company and the Associate agree that arbitration shall proceed on an individual basis without the right for any claims to be arbitrated as a class, consolidated, collective or representative action.  Nothing within this Agreement or the Program constitutes a waiver or prohibition of an Associate's right to file a charge or complaint with the EEOC, NLRB or similar agency.  This Agreement is mutual, encompassing all claims the Associate may have against the Company or that the Company may have against the Associate, except as explicitly stated in the Program.  The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract, express or implied; tort claims; claims for discrimination, harassment or retaliation of any kind; and claims for violation of any federal, state or other statute, ordinance, regulation, or common law.

2.    **Governing Law**   The parties agree that the Company is engaged in transactions involving interstate commerce.  Except as provided or under the Program, or as required by law, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement; and all arbitrations covered by this Agreement shall be adjudicated in accordance with the state or federal law for the jurisdiction where the Associate was employed when the dispute arose.

3.    **Waiver of Right to Jury**   By entering into this Agreement, the Company and Associate each knowingly and  voluntarily  waive  any  and  all rights they have under law to a trial before a jury or judge in a court of law for a covered claim.  The Company and Associate each understand that they are giving up no substantive rights, and that this Agreement simply governs forum.

4.    **Exclusive Remedy**   For claims covered by this Agreement, arbitration on an individual basis is the parties' exclusive remedy.  The arbitrator's authority to resolve claims and make written awards is limited to claims between the Company and the Associate only.  Only a court can interpret the scope and application of the class, consolidated, collective or representative action waiver.  Only an arbitrator can interpret the scope and application of the remainder of the Program.  The decision of an arbitrator on any claims submitted to arbitration as provided by this Agreement shall be final and binding upon the parties, except for the limited right to appeal as set forth in the Program.

5.    **Summary**    This is only a summary of the Program. The Program can only be amended, modified,  or revoked with 14 days prior notice to Associate, which amendment, modification or revocation will not affect claims which have already been submitted under the Program or claims where a charge has been filed

Exhibit 1-B, Page 6

to satisfy the federal and/or state conditions precedent for employment-related claims prior to submission of a claim under this Program.  In the event of any conflicts between this Summary and the Program, the Program will control.

**ASSOCIATE ALSO UNDERSTANDS THAT IT IS HIS/HER RESPONSIBILITY TO REVIEW THE MATCH GROUP, INC. ALTERNATIVE DISPUTE RESOLUTION PROGRAM WHICH CONTAINS ALL OF THE TERMS UNDER WHICH DISPUTES WILL BE RESOLVED UNDER THE PROGRAM.  THE PROGRAM DOCUMENT IS INCORPORATED BY REFERENCE INTO THIS AGREEMENT.   A COMPLETE COPY OF THE PROGRAM CAN BE OBTAINED AT THE COMPANY'S HUMAN RESOURCES' OFFICE OR BY ACCESSING MATCHGROUP POLICIES EXTERNAL LINK IN WORKDAY THROUGH A PERSONAL COMPUTER.  THE PROGRAM CAN BE FOUND IN THE "POLICIES" SECTION OF THE WORKDAY DASHBOARD..**

**ASSOCIATE:**

DocuSigned by:

*Leeza Sanfilippo*                     1/2/2018 | 10:06 AM PST
Signature BAA0A421...

Leeza Sanfilippo                      Date
Printed Name

Exhibit 1-B, Page 7

# Exhibit 1-C

**MATCH GROUP, INC.**
**ALTERNATIVE DISPUTE RESOLUTION PROGRAM FOR CALIFORNIA**

### A BETTER WAY TO RESOLVE DISPUTES

This Dispute Resolution Program is the dispute resolution program adopted by the Company on December 27th, 2017, and as updated from time to time.   In recognition of the fact that, from time to time, differences may arise between the Company and its associates (each, an "Associate") before, during, or after, each Associate's employment, and in recognition of the fact that resolution of differences in the courts is rarely time or cost effective for either party, the Company has instituted this Alternative Dispute Resolution Program (the "Program").   In furtherance of the Program, the Company and each of its Associates have entered into a Mutual Agreement to Arbitrate Claims on an Individual Basis ("Agreement") as an efficient, impartial and cost-effective dispute resolution procedure.

1.     **Mutual Agreement to Resolve Disputes Through Arbitration**

This Program is mutual, covering all claims that each Associate may have against the Company or that the Company may have against an Associate, except as explicitly stated below.  All references to the "Company" in this Agreement shall include Match Group, Inc., and all of its respective related, parent, subsidiary, and affiliated entities, including all former, current and future officers, directors and employees of all such entities, all benefit plans and their fiduciaries and administrators, and all successors and assigns of these individuals or entities.  All references to "Associate" include each associate and his/her spouse, representative, successor, or any person or entity making a claim by, through or on behalf of an Associate.

2.     **Claims Covered by This Agreement**

Except as otherwise provided in this Program or as otherwise required by law, the Company and the Associate consent and agree to the resolution by arbitration of all claims or controversies involving or in any way concerning Associate's application with, employment with, or termination from, the Company.  The Company and the Associate further agree that arbitration shall proceed solely on an individual basis without the right for any claims to be arbitrated as a class, consolidated, collective or representative action.  Claims may not be joined or consolidated unless agreed to by all parties in writing.  Nothing within this Agreement constitutes a waiver or prohibition of an Associate's right to file a charge or complaint with the Equal Employment Opportunity Commission, National Labor Relations Board or state or federal agency of a similar nature.

The claims covered by this Program  include, but are  not limited to, claims for standard  wages, overtime wages, benefits, equal pay, or other compensation due; claims for breach of any contract, express or implied; personal injury or employment related tort claims (including claims for  negligence, gross  negligence, intentional harm);  claims for discrimination, harassment or retaliation of any kind - including without limitation discrimination, harassment or retaliation based on gender, race, nationality, ethnicity, disability, religion, age or any other status protected under applicable law; and claims for violation of any federal or state statute or common law or regulation.

3.     **Claims Not Covered by This Agreement**

The Program does not apply to or cover claims for workers' compensation or unemployment compensation benefits; any criminal complaint or related criminal proceeding; or claims based upon an associate pension or benefit plan that contains an arbitration or other non-judicial resolution procedure, in which case the provisions of that plan shall apply. Also, this Program will not apply to any claims that are expressly covered by a collective bargaining agreement, in which case the terms, conditions and procedures of that collective bargaining agreement will control.

Either party may, at their option, seek emergency injunctive relief under California Code of Civil Procedure Section 1281.8 in a court of competent jurisdiction for any claim or controversy arising out of or related to the unauthorized use, disclosure or misappropriation of the confidential and/or proprietary information of either party.  For example the Company may use the court system to seek emergency injunctive relief to prevent disclosure of its confidential or propriety information or trade secrets.  Similarly, the Associate may elect to use the court system to seek emergency

injunctive relief to protect the Associate's own inventions or trade secrets, or to stop the Company from allegedly interfering with the Associate's employment with another company or other lawful activity after employment.

Nothing in this Program will preclude the parties from agreeing to resolve claims that are otherwise not covered by the Agreement pursuant to the provisions of the Agreement.

4.      **Governing Law and Damages Recoverable under the Program**

4.1.    **Interstate Commerce and the Federal Arbitration Act**

Associate acknowledges that the Company is engaged in transactions involving interstate commerce. Except as provided elsewhere in this Program, or as required by law, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Program.

4.2.    **Applicable Law for Resolving Claims**

All arbitrations covered by this Program shall be adjudicated in accordance with the applicable state or federal law which would be applied by a United States District Court sitting in the city where the dispute arose or, if the dispute involves a dispute over a contract that designates jurisdiction or venue, the location designated by the contract at issue.

4.3.    **Obligation to Satisfy Federal and State Conditions Precedent on Claims**

Both parties must comply with any applicable conditions precedent to filing a claim under state or federal law. For example, an Associate must comply with the applicable deadlines for filing a charge of discrimination with any federal, state or local agency (such as the Equal Employment Opportunity Commission or the Fair Employment and Housing Commission, or other comparable State or Municipal agencies); and filing such a charge is a prerequisite to filing a claim under this Program for any claim in which the applicable law requires a charge to be filed with a federal, state or local commission. Similarly, if any such prerequisite applies to a claim filed by the Company, then Company must satisfy it before filing a claim under this Program.

4.4.    **Remedies and the Statute of Limitations**

The arbitrator shall apply the same substantive law, with the same statutes of limitations and same remedies that would apply if the claims were brought in a court of law.

5.      **Waiver of Right to Jury**

By entering into the Agreement under this Program, the Company and Associate each knowingly and voluntarily waive any and all rights they have under law to a trial before a jury or before a judge in a court of law. The Company and Associate each understand that they are giving up no substantive rights.

6.      **The Arbitration Process**

Arbitration under this Program shall be before a single arbitrator in the county in which the dispute arose and will be administered in accordance with the applicable arbitration rules and procedures of the American Arbitration Association (AAA) or another alternative dispute resolution (ADR) provider selected by the parties (except where the AAA or other ADR provider's rules are contrary to applicable state or federal law), and California Code of Civil Procedure Section 1280 *et seq*.

7.      **Procedures For Selecting an Arbitrator**

The parties shall use one arbitrator only. The ADR provider shall provide the parties with a list of proposed arbitrators. Upon receiving the first list of proposed arbitrators, the parties will strike those arbitrators they do not want to hear the dispute and ADR provider can choose an arbitrator from those on the list not stricken by one of the parties. In the

event the parties cannot agree to an arbitrator from the first list presented by the ADR provider, the parties will request a second list from which to make their strikes and attempt to choose an arbitrator. If no arbitrator is selected after the parties have made their strikes on the second list, the ADR provider shall appoint an arbitrator.

If, after arbitration commences, an arbitrator cannot serve for whatever reason, then the ADR provider will present the parties a new list from which to make their strikes so that a replacement can be chosen and the same procedure as detailed in the preceding paragraph shall be followed to select the replacement.

8.      **Representation**

Each party may be represented by an attorney at any arbitration covered by this Program.

9.      **Fees and Costs**

The Company shall pay all costs uniquely attributable to arbitration, including the administrative fees and costs of the arbitrator (unless the Associate voluntarily opts to pay up to one-half of the fees and expenses). Each party shall pay their own costs (including without limitation expert witness fees) and attorney fees, if any, unless the arbitrator rules otherwise. If the law applicable to the claim(s) being arbitrated, or any agreement, affords the prevailing party attorneys' fees and costs, then the arbitrator shall apply the same standards a court would apply to award such attorneys' fees or costs. Associates shall not be required to pay any fee or cost that they would not be required to pay in a state or federal court action.

10.     **Discovery**

The parties will be entitled to engage in the full range of discovery that would be available under applicable state or federal law.

11.     **Dispositive Motions**

The arbitrator will have the authority to consider and grant motions dispositive of all or part of any claim, using the standards governing such motions under the Federal Rules of Civil Procedure or applicable state law. This includes motions of summary judgment, which, if granted, allow a party, prior to the arbitration, to either (1) have all or part of the other party's claim dismissed or (2) obtain an affirmative finding on a claim brought by that party.

12.     **Venue**

Arbitration under this Program will be in the county where the Associate worked at the time the dispute arose.
The arbitration will be conducted at a site mutually agreed upon by the parties after due consideration of issues such as convenience to the parties and witnesses and costs of the facilities. If the parties cannot agree on such site, the ADR provider shall designate a location after giving due consideration of issues such as convenience to the parties and witnesses and costs of the facilities.

13.     **Exclusive Remedy**

For claims covered by this Program, arbitration on an individual basis is the parties' exclusive remedy. The arbitrator's authority to resolve claims and make written awards is limited to claims between the Company and the Associate only. Only a court can interpret the scope and application of this class, consolidated, collective or representative action waiver. In the event the waiver is found to be unenforceable or unlawful, the only forum for such an action is the federal or state court in that jurisdiction. Other than the waiver, only the arbitrator can interpret the scope and application of the remainder of this Program and the Agreement. The arbitrator shall have no power to vary or ignore the terms of this Program or the Agreement and shall be bound to follow the applicable federal or state law in rendering a decision and, when appropriate, devising a remedy on the arbitrated claim.

The arbitrator's award is to be in writing, with reasons given and evidence cited for the award. The opinion should be issued within 30 days from the later of the date on which the arbitration hearing concludes or the date on which post-hearing briefs (if applicable) are received. Any court of competent jurisdiction may enter judgment upon the award, either by (1) confirming the award, or (2) vacating, modifying, or correcting the award on any ground referred to in the Federal Arbitration Act or California Code of Civil Procedure Section 1286 *et seq.*

## 14.   **Appeal**

Subject to the limitations set forth in Section 13 above, the parties retain their right to appeal the arbitrator's decision in a court of law according to the standard for appellate review set forth in the Federal Arbitration Act or applicable state arbitration law.

## 16.   **Miscellaneous Terms**

### 16.1.   **Consideration**

In addition to any other consideration that may exist for the agreement to arbitrate on an individual basis, each party's mutual promise to resolve claims and controversies by arbitration on an individual basis in accordance with the provisions of this Program and the Agreement between the parties constitutes consideration for the Agreement. Likewise, Associate acknowledges that his/her continued employment with the Company after receiving notice of this Program (and any amendments to the Program) will also constitute consideration for the Agreement (and any modifications to the Agreement) and such continued employment will demonstrate acceptance of the provisions of this Program.

### 16.2.   **Not an Agreement of Continued Employment**

The agreement to arbitrate (as set forth in the Program and the Agreement) is not, and shall not be construed to create, a contract of continued employment, express or implied, nor shall this Program or the Agreement be construed in any way to alter the Associate's status as an employee at will, permitting either the Associate or the Company to terminate the employment relationship at any time, with or without cause or advance notice.

### 16.3.   **Term, Modification and Revocation**

The parties' agreement to arbitrate shall survive the employer-employee relationship between the Company and the Associate and shall apply to any covered claim whether it arises or is asserted during or after termination of the Associate's employment with the Company or the expiration of any benefit plan. No employee of Company can orally amend, modify or change the terms of this Program. This Program can be modified or revoked in writing only by the Company's corporate general counsel or chief human resources officer. Such modification or revocation will only take place with 14 days' notice to the Associates. Further, any modification or revocation will not apply to any claim that has already been filed under this Program or any charge that has been filed with any federal, state or local agency to satisfy the federal and/or state conditions precedent for employment-related claims. The parties specifically agree that the Company will not be considered to have knowledge of any actual, potential, or prospective claim unless such claim has been filed under this Program or a charge has been filed to satisfy the federal and/or state conditions precedent for employment-related claims.

### 16.4.   **Severability**

If any provision of this Program or the Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Program or Agreement.

### 16.5.   **Sole and Entire Agreement**

This Program document and the Agreement constitute the complete agreement of the parties on the subject of arbitration of disputes, except for any arbitration provision contained in any pension plan, benefit plan, or

collective bargaining agreement. This Program document and the Agreement supersede any prior or contemporaneous oral or written agreement or understanding on the subject.

16.6.   **Effective Date**

This Dispute Resolution Program is effective as of February 1st, 2018.