1  MARC KATZ (TX Bar No. 00791002) (Admitted *pro hac vice*)
   marc.katz@dlapiper.com
2  CRISTINA TORRES (TX Bar No. 24051437) (Admitted *pro hac vice*)
   cristina.torres@dlapiper.com
3  **DLA PIPER LLP (US)**
   1717 Main St., Suite 4600
4  Dallas, TX 75201
   Tel.:  214.743.4500
5  Fax:  214.743.4545

6  ERIC S. BEANE (Bar No. 186029)
   eric.beane@dlapiper.com
7  **DLA PIPER LLP (US)**
   2000 Avenue of the Stars, Suite 400 North Tower
8  Los Angeles, California 90067-4704
   Tel.:  310.595.3000
9  Fax:  310.595.3300

10 Attorneys for Defendant
   MATCH GROUP, LLC (erroneously sued as
11 Tinder, Inc.)

12                    **UNITED STATES DISTRICT COURT**

13                    **CENTRAL DISTRICT OF CALIFORNIA**

14

15 ELIZABETH SANFILIPPO, an          **CASE NO.  2:18-cv-08372 AB**
   individual,                       **(JEMx)**
16
                 Plaintiff,          *[Assigned to Hon. André Birotte Jr.]*
17
   v.                                **DEFENDANT MATCH GROUP,**
18                                    **LLC'S REPLY IN SUPPORT OF**
   TINDER, INC., a Delaware          **DEFENDANT'S MOTION TO**
19 corporation, and DOES 1 through   **COMPEL ARBITRATION AND**
   20, Inclusive,                    **DISMISS OR STAY**
20                                    **PROCEEDINGS**
                 Defendants.
21                                    *[Filed concurrently with*
                                      *(1) Declaration of Cristina Torres;*
22                                    *(2) Defendant's Evidentiary*
                                      *Objections; and (3) [Proposed]*
23                                    *Order Sustaining Defendant's*
                                      *Evidentiary Objections]*
24
                                      **Date:    November 30, 2018**
25                                    **Time:    10:00 am**
                                      Place:   Crtrm. 7B
26
                                      *[Removed from the Superior Court of*
27                                    *the State of California, County of Los*
                                      *Angeles, Case No. BC718649]*
28

DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY PROCEEDINGS

**MEMORANDUM AND POINTS OF AUTHORITIES**

## I.    INTRODUCTION

On January 2, 2018, Plaintiff Elizabeth Sanfilippo ("Plaintiff") signed a Mutual Agreement to Arbitrate Claims on an Individual Basis and Summary of the Alternative Dispute Program for California ("Mutual Arbitration Agreement" or "Agreement") and agreed to, with limited exceptions not applicable here, resolve **all** disputes "arising out of or in connection with" her "application with, employment with, or termination from, the Company" via arbitration.[1]  (*See* ECF No. 18, #3 (Declaration of Lisa. J. Nelson ("Nelson Decl.")), at ¶ 5; Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at ¶ 1.)  The terms of the Mutual Arbitration Agreement and corresponding Alternative Dispute Resolution Program for California ("ADR Program") specifically obligate Plaintiff to arbitrate any claims she raised during her employment with Match Group, LLC ("Match") or the now non-existent, Tinder, Inc. ("Tinder").[2]  On August 20, 2018, Plaintiff ignored her obligations by filing suit in state court against Tinder.

Plaintiff's Opposition centers on two issues:  (1) the effective date of the ADR Program; and (2) her allegation that the Mutual Arbitration Agreement is

---

[1] The "Company" is defined as "Match Group, Inc., and all of its related, parent, subsidiary, and affiliated entities . . . and all successors and assigns of these individuals or entities."  (Ex. 1-C to Nelson Decl., ADR Program, at ¶ 1.)  Match is a subsidiary of Match Group, Inc., and is the assignee of and successor to Tinder's assets and liabilities following Tinder's merger with and into Match Group, Inc. on July 13, 2017.  (ECF No. 18, #2 (Second Declaration of Laurie Braddock ("Second Braddock Decl.")), at ¶ 5.)  Tinder was a subsidiary and related entity of Match Group Inc., from the inception of Plaintiff's employment until it merged into Match Group, Inc. on July 13, 2017.  (Second Braddock Decl., at ¶ 4.)

[2]  As noted in Match's previous briefing, even if some of Plaintiff's claims accrued prior to Tinder's merger into Match Group, Inc., which is not the case, Tinder was a subsidiary of Match Group, Inc. and Match was the assignee of Tinder's assets and liabilities.  (Second Braddock Decl., at ¶¶ 4, 5.)  Thus the Mutual Arbitration Agreement and ADR Program would apply to any claims raised by Plaintiff against Tinder.  (Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at ¶ 1.)

unconscionable.[3]  First, Plaintiff argues that "the dispute in this case" arose prior to the "effective date" of the Mutual Arbitration Agreement.  (Opp'n at 2.)  In truth, broad arbitration agreements such as the Mutual Arbitration Agreement apply to *all claims* that fall within its scope, regardless of when they arose.  *See In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007).  Second, Plaintiff tries, but fails, to prove that the Mutual Arbitration Agreement is procedurally or substantively unconscionable.

As set forth in Match's Motion to Compel[4] and this Reply, the Mutual Arbitration Agreement is "valid" and "enforceable" and should be "rigorously enforced according to [its] terms."  *See* 9 U.S.C. §§ 2, 3 and 4; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  Plaintiff cannot sidestep her obligations by seeking redress in court.[5]  Accordingly, Match respectfully requests that the Court

---

[3] In Plaintiff's Opposition to Defendant's Motion ("Opposition"), Plaintiff alleges that "the arbitration agreement was drafted by Tinder."  (Opp'n at 3.)  As discussed at length in Match's Notice of Removal (ECF No. 1), Motion to Compel (ECF No. 18) and Response to Plaintiff's Motion to Remand (ECF No. 24), Tinder ceased to exist on July 13, 2017, when it merged into Match Group, Inc.  (ECF No. 1, #2 (First Declaration of Laurie Braddock ("First Braddock Decl.")), at ¶ 3; Second Braddock Decl., at ¶¶ 4, 6; ECF No. 24, at 3–4.)  Match Group, Inc. then assigned all of Tinder's assets and liabilities to Match.com, L.L.C., which subsequently changed its name to Match Group, LLC (i.e., Match).  (Second Braddock Decl., at ¶ 5.)  To the extent that any of Plaintiff's claims arose during her employment with Tinder (*i.e.*, on or before July 13, 2017), an allegation that Match disputes, Match inherited any such claims when Match became the successor to, and assignee of, Tinder's assets and liabilities.  (*See* Second Braddock Decl., at ¶ 3; ECF No. 24, at 3–4.)

[4] Match's Reply incorporates and restates the facts and arguments in its Notice of Motion and Motion to Compel Arbitration ("Motion to Compel") and all declarations, exhibits and other documents filed concurrently with such Motion to Compel.  Further, Match's Reply incorporates by reference its Evidentiary Objections to the Declaration of Elizabeth Sanfilippo in Support of Plaintiff's Opposition to Defendant's Motion to Compel ("Evidentiary Objections"), filed simultaneously with this Reply.

[5]  Plaintiff is not only avoiding her arbitration obligations, but is improperly seeking

uphold the terms of the parties' Mutual Arbitration Agreement and send this dispute to arbitration, where it belongs.

## II.   THE ARBITRATOR, NOT THE COURT, MUST DECIDE ISSUES OF ARBITRABILITY.

As a threshold issue, Plaintiff asks this Court to determine whether the Mutual Arbitration Agreement is valid and enforceable, and whether her claims fall within the scope of that Agreement—both of which are questions of arbitrability. But the parties have designated all issues of arbitrability to the arbitrator (other than issues of class/collective action waivers).  (*See* Mot. at 2, 10–13; Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at ¶ 4 ("Only an arbitrator can interpret the scope and application of the remainder of the Program.").)  Plaintiff only addresses whether the claims are arbitrable, and tellingly ignores the issue of whether the parties agreed to arbitrate questions of arbitrability.  Where an arbitration provision delegates to the arbitrator the authority to decide issues related to scope and application of an arbitration program, it "clearly and unmistakably indicates" the parties' intent for the arbitrator to decide the threshold question of arbitrability.  *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1202, 1208–09 (9th Cir. 2016) (upholding delegation of arbitrability where the agreement gave the arbitrator authority to determine the "validity or application" and the "enforceability, revocability or validity" of the respective arbitration clauses); *see also O'Connor v. Uber Techs., Inc.*, No. 14-16078, at *14–17 (9th Cir. Sept. 25, 2018) (order reversing district court ruling denying motion for arbitration).[6]  Thus, it is clear that an arbitrator should decide questions of arbitrability.

---

to litigate this case in California state court.  (*See* ECF No. 13 (Plaintiff's Notice of Motion and Motion to Remand), filed on October 17, 2018.)

[6] A copy of the *O'Connor* opinion, which is not yet available on Westlaw, is attached as Exhibit A to the Declaration of Cristina Torres in Support of Defendant Match Group, LLC's Reply ("Declaration of Cristina Torres"), filed concurrently with this Reply.

### III.    THE MUTUAL ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE.

Even if the Court declines to delegate questions of arbitrability, it is clear that arbitration of Plaintiff's claims is proper and should be compelled.  Plaintiff argues that the Mutual Arbitration Agreement is "unconscionable" because it requires Plaintiff to arbitrate claims that arose prior to the effective date of the Mutual Arbitration Agreement without giving Plaintiff prior notice.  (Opp'n at 11.)  But Plaintiff fails to meet her burden that the Agreement is either procedurally or substantively unconscionable.  *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012) ("The party resisting arbitration bears the burden of proving unconscionability.")[7]

Procedural unconscionability "concerns the manner in which the agreement was negotiated and the circumstances of the parties at the time, focusing on the level of oppression and surprise involved in the agreement." *Romo v. CBRE Group, Inc.*, No. 8:18-CV-00237-JLS (KESx), 2018 WL 4802152, at *7 (C.D. Cal. Oct. 3, 2018) (citing *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013)).  The threshold issue is whether the contract is one of adhesion, and Plaintiff fails to meet that threshold.  *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 767 (Cal. 2000).  It is true that "take it or leave it" or adhesion arbitration agreements can be considered oppressive.  *Lovig v. Best Buy Stores LP*, No. 18-cv-02807-PJH, at *13 (N.D. Cal. Aug. 28, 2018).[8]  However, this fact is not dispositive.  *Borgarding v. JPMorgan Chase Bank*, No. 16-CV-2485-FMO (RAOx), 2016 WL 8904413, at *4 (C.D. Cal. Oct. 31, 2016).  And more specifically, conditioning continued employment on entering into an arbitration

---

[7] Both procedural and substantive unconscionability must be shown, but they need not be present in the same degree and are evaluated on a sliding scale.  *Pinnacle Museum*, 282 P.3d at 1232 (citation omitted).

[8] A copy of the *Lovig* opinion, which is not yet available on Westlaw, is attached as Exhibit B to the Declaration of Cristina Torres, filed concurrently with this Reply.

agreement "is not a bar to its enforcement." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 179 (Cal. Ct. App. 2015); *see also Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1127 (Cal. Ct. App. 1999) ("[A] compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis."). Thus, the fact that Plaintiff's continued employment was conditioned on entering into the Mutual Arbitration Agreement does not render the agreement unconscionable.

Plaintiff also cannot show surprise. The title of the document is bolded and in capital letters (*see* Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at 1), so Plaintiff can hardly claim the terms of the Agreement were hidden, buried or a surprise. Further, above the signature block of the document, there is additional, bolded, all-caps language asking Plaintiff to review the ADR Program and advising Plaintiff of where the Agreement and ADR Program will be posted. (Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at 2.) Finally, Plaintiff was emailed the Agreement and ADR Program and afforded an opportunity to review the documents before signing and accepting their terms. (*See* Nelson Decl., at ¶¶ 5, 6; Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at 2.) On balance, these facts do not reflect "any oppression or surprise beyond that inherent in any adhesion contract, and there is thus a low degree of procedural unconscionability." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 956 (N.D. Cal. 2015).

Plaintiff also alleges that the Mutual Arbitration Agreement is unconscionable because it permits the Company to unilaterally modify the Agreement and apply it to claims that pre-date the Agreement. (Opp'n at 10–12.) But neither unilateral modification nor retroactive application renders arbitration agreements enforceable, so Plaintiff has not met her burden on this claim.

As this Court has made clear, "unilateral modification provisions are not substantively unconscionable." *Asher v. E! Entm't Television, LLC*, No. 16-CV-

8919-RSWL (SSx), 2017 WL 3578699, at *6 (C.D. Cal. Aug. 16, 2017).[9]  In *Asher*, the plaintiff entered into an arbitration agreement that could be modified or discontinued as long as she received 60-day notice.  *Id.* at *6.  Further, any changes to the agreement would be prospective and would not affect previously filed claims. *Id.*  The court relied on these facts in holding that the agreement was <u>not</u> substantively unconscionable.  *Id.*

Here, the ADR Program provides similar safeguards.  (Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at ¶ 5.)  What is more, arbitration agreements are not unconscionable simply because they are intended to apply retroactively; typically, more is required.  *Lovig*, No. 18-cv-0287-PJH, at *13; *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d at 1223–24.  When taken together, these factors weigh heavily in favor of a valid and enforceable agreement.

## IV.  PLAINTIFF'S CLAIMS FALL UNDER THE MUTUAL ARBITRATION AGREEMENT AND ADR PROGRAM.

Plaintiff alleges that her claims are not covered under the parties' Mutual Arbitration Agreement because they pre-date the "effective date" of the "arbitration agreement."  (Opp'n at 2.)[10]  To the contrary, regardless of when Plaintiff's claims arose, they are covered by the Agreement.

As a threshold matter, Plaintiff offers no concrete evidence that her claims arose prior to the effective date of the Mutual Arbitration Agreement, other than conclusory allegations that the "sexual harassments [sic] at issue occurred and were

---

[9] In a recent unpublished opinion, the Ninth Circuit upheld the proposition that unilateral modification provisions are not substantively unconscionable because they are always subject to the limits imposed by the covenant of good faith and fair dealing implied in every contract.  *Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 F. App'x 430, 432 (9th Cir. 2015) (citations omitted).

[10] Plaintiff does not dispute that the scope of the Mutual Arbitration Agreement covers her employment-law claims; rather, she disputes whether there are temporal limitations on the scope of the Agreement.  (Opp'n at 2.)  In any event, the "scope and application" of the ADR Program has been reserved for the arbitrator.  (Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at ¶ 4.)

1  reported in mid 2017 and January 2018." (Opp'n at 2.)  Indeed, Plaintiff's

2  Complaint does not place any alleged harassment (or any other claims) prior to the

3  date she signed the Mutual Arbitration Agreement (January 2, 2018) or the effective

4  date of the ADR Program (February 1, 2018).  (*See* Pl.'s Compl.)

5        Even if Plaintiff can somehow show her purported harassment claims arose

6  prior to January 2, 2018 and/or February 1, 2018, her other claims clearly arose

7  afterward.  Plaintiff's alleged wrongful termination, retaliation and breach of

8  covenant claims did not accrue *until March 1, 2018, when Plaintiff alleges that she*

9  *was retaliated against and wrongfully terminated.* (*See* Pl.'s Compl., at ¶¶ 39–55,

10  64–71.)

11        But the Court need not waste energy on the timeline of events because all of

12  Plaintiff's claims fall within the scope of the Mutual Arbitration Agreement,

13  regardless of when they accrued.  Plaintiff's claims "arise out of or in connection

14  with" Plaintiff's "employment with, or termination from," the Company, including

15  Match and Tinder.  (Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at ¶ 1;

16  Pl.'s Compl.)[11]  This broadly drafted language is intended to cover **all claims or**

17  **controversies arising out of** or in connection with Plaintiff's employment or

18  termination.  *See, e.g., Trujillo v. Gomez*, No. 14-CV-2483-BTM (BGSx), 2015 WL

19  1757870, at *8 (C.D. Cal. Apr. 17, 2015) (holding that a "broad" agreement

20  covering "**any claim or controversy arising out of** or relating to the [a]greement"

21  was intended to cover claims based on events that pre-dated the agreement); *In re*

22  *Verisign*, 531 F. Supp. 2d at 1224 (holding that "**any dispute or claim arising out**

23  **of** or relating to the engagement letter between the parties, the services provided

24  hereunder, or any other services provided . . ." was intended to cover claims pre-

25

26  [11] The Mutual Arbitration Agreement also provides that it survives the employer-
employee relationship between Plaintiff and the Company and applies to any
27  covered claim, whether it arises or is asserted before or after termination of the
Plaintiff's employment with the Company.  (*See* Ex. 1-C, ADR Program, at ¶ 16.3.)
28

dating the letter); *Lovig*, No. 18-cv-0287-PJH, at *11 (holding that parties can contract to arbitrate even past disputes "**arising under**" an agreement); *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 651 (6th Cir. 2008) (holding that arbitration clause encompassed claims pre-dating the agreement because the clause required arbitration of all claims "arising from or in connection with . . . the services provided by [the plaintiff]").  The arbitration agreement need not include an express and unequivocal statement that it applies to claims arising prior to the agreement's effective date.  *See Trujillo*, 2015 WL 1757870, at *7; *In re Verisign*, 531 F. Supp. 2d at 1224.  Ultimately, if there is ambiguity as to whether "all claims or controversies" relates to past claims, any ambiguity should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 (1983).

The cases cited by Plaintiff are all inapposite.  For instance, in *Castro v. ABM Indus., Inc.*, the parties had entered into a CBA that provided arbitration as "the sole and exclusive method of resolving all Covered Claims, whenever they arise."  No. 17-cv-3026-YGR, 2018 WL 2197527, at *1 (N.D. Cal. May 14, 2018).  The court held that the present tense word "arise" was intended to govern "present and future, but not past, conduct."  *Id.* at *4.  The court rationalized that the phrase "whenever they arise" pointed to the <u>timing</u> of the covered claims rather than the <u>subject matter</u> of the claims themselves.  *Id.*

Unlike the cases cited by Plaintiff, the Agreement here repeatedly demonstrates the parties' intent to cover <u>all</u> claims, regardless of when they arise.  (*See, e.g.*, Ex. 1-B to Nelson Decl., Mutual Arbitration Agreement, at ¶ 1 (the Agreement "encompass[es] all claims [Plaintiff] may have against the Company . . . "); Ex. 1-C to Nelson Decl., ADR Program, at ¶ 2 ("Associate consent[s] and agree[s] to the resolution of all claims or controversies involving or in any way concerning Associate's application with, employment with, or termination from the Company.").)  The plain language of the Mutual Arbitration Agreement simply does not "evidence[ ] an intent to arbitrate future claims only."  (Opp'n at 8.)

Absent "any express provision excluding a particular grievance from arbitration," "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). No such purpose exists here, and all of Plaintiff's claims are arbitrable.

## V.   THE COMPANY'S TERMS OF USE, WHILE ENFORCEABLE, ARE IRRELEVANT.

Finally, Plaintiff points to the "Terms of Use" for the Tinder App in an attempt to show that (i) Tinder drafted the Mutual Arbitration Agreement and (ii) Tinder knows how to draft arbitration language that is intended to operate retroactively. (*See* Opp'n at 3, Ex. B, "Terms of Use".) As a point of clarification, the "Terms of Use" apply to users of the Tinder app and do not relate to the non-existent corporation Tinder. *Id.* at 1. To be sure, the "Terms of Use" expressly provide that Tinder is "operated by Match Group, LLC," the company that was assigned Tinder's assets and liabilities upon Tinder's merger into Match Group, Inc. *Id.* More importantly, the scope of the consumer arbitration clause in the Tinder app's "Terms of Use" has no connection to the Company's Mutual Arbitration Agreement. They are different agreements, with different scopes and purposes, intended for different parties. Plaintiff cannot use language in an unrelated third-party agreement to avoid her obligation to arbitrate.

## VI.   CONCLUSION

During her employment with Match, Plaintiff agreed to arbitrate all claims arising out of, in connection with, involving, or in any way concerning her application with, employment with, or termination from the Company. Plaintiff's claims in this lawsuit fall squarely within the Mutual Arbitration Agreement. Match thus respectfully requests that the Court grant its Motion to Compel and move this dispute to arbitration, where it belongs.

DLA PIPER LLP (US)
LOS ANGELES

WEST\284167096.6                                 -9-
DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY PROCEEDINGS

1    DATED:  November 16, 2018          DLA PIPER LLP (US)

2

3

4                                      By:  /s/  Cristina Torres
                                            MARC KATZ
5                                           ERIC S. BEANE
                                            CRISTINA TORRES
6
                                       *Attorneys for Defendant*
7                                      *Match Group, LLC (erroneously sued as*
                                       *Tinder, Inc.)*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEST\284167096.6                       -10-
                     DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION
                                     AND DISMISS OR STAY PROCEEDINGS