MARC KATZ (TX Bar No. 00791002) (Admitted *pro hac vice*)
marc.katz@dlapiper.com
CRISTINA TORRES (TX Bar No. 24051437) (Admitted *pro hac vice*)
cristina.torres@dlapiper.com
**DLA PIPER LLP (US)**
1717 Main St., Suite 4600
Dallas, TX 75201
Tel.: 214.743.4500
Fax: 214.743.4545

ERIC S. BEANE (Bar No. 186029)
eric.beane@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars,
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel.: 310.595.3000
Fax: 310.595.3300

Attorneys for Defendant
MATCH GROUP, LLC (erroneously sued as
Tinder, Inc.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SANFILIPPO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TINDER, INC., a Delaware corporation, and DOES 1 through 20, Inclusive,<br><br>Defendants. | **CASE NO. 2:18-cv-08372 AB (JEMx)**<br><br>*[Assigned to Hon. André Birotte Jr.]*<br><br>**DECLARATION OF CRISTINA TORRES IN SUPPORT OF DEFENDANT MATCH GROUP, LLC'S REPLY**<br><br>**Date:** **November 30, 2018**<br>**Time:** **10:00 a.m.**<br>Place: Crtrm. 7B<br><br>*[Removed from the Superior Court of the State of California, County of Los Angeles, Case No. BC718649]* |

1    I, Cristina Torres, declare as follows:

2        1.       I am an attorney at law duly licensed to practice in the State of Texas

3    and admitted *pro hac vice* to practice before this Court.  I am Of Counsel at DLA

4    Piper LLP (US), attorneys of record for Match Group, LLC ("Match"), in the

5    above-captioned lawsuit.  I submit this Declaration in support of Match's Reply in

6    Support of Match's Motion to Compel Arbitration and Dismiss or Stay Proceedings

7    ("Reply").

8        2.       I am over the age of 18 years, of sound mind, and duly competent to

9    make this Declaration.  I have personal knowledge of the facts set forth in this

10   Declaration and if called as a witness, could and would competently testify hereto.

11       3.       Attached as Exhibit A is a true and correct copy of the Ninth Circuit

12   opinion issued in *O'Connor v. Uber Techs., Inc.*, No. 14-16078 (9th Cir. Sept. 25,

13   2018).

14       4.       Attached as Exhibit B is a true and correct copy of the Order

15   Compelling Arbitration and Staying Case in *Lovig v. Best Buy Stores LP*, No. 18-

16   cv-02807-PJH (N.D. Cal. Aug. 28, 2018).

17       I declare under penalty of perjury under the laws of the United States of

18   America and the State of California that the foregoing is true and correct.

19

20       Executed on this 16th day of November, 2018, at Dallas, Texas.

21

22                                           /s/ Cristina Torres
                                             Cristina Torres
23

24

25

26

27

28

DECLARATION OF CRISTINA TORRES IN SUPPORT OF DEFENDANT MATCH GROUP, LLC'S REPLY
WEST\284215706.1

# Exhibit A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DOUGLAS O'CONNOR; THOMAS COLOPY; DAVID KHAN; MATTHEW MANAHAN; WILSON ROLLE, JR.; WILLIAM ANDERSON, individually and on behalf of all others similarly situated, *Plaintiffs-Appellees*, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., *Defendant-Appellant.* | No. 14-16078 <br><br> D.C. No. 3:13-cv-03826-EMC |
| DOUGLAS O'CONNOR; THOMAS COLOPY; MATTHEW MANAHAN; ELIE GURFINKEL, individually and on behalf of all others similarly situated, *Plaintiffs-Appellees*, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., *Defendant-Appellant.* | Nos. 15-17420 <br> 15-17532 <br><br> D.C. No. 3:13-cv-03826-EMC |

2                           O'CONNOR V. UBER

| | |
|---|---|
| HAKAN YUCESOY, on behalf of himself and all others similarly situated, | Nos. 15-17422<br>15-17534 |
| *Plaintiff-Appellee*, | D.C. No.<br>3:15-cv-00262-EMC |
| v. | |
| UBER TECHNOLOGIES, INC., *Defendant-Appellant.* | |

| | |
|---|---|
| RICARDO DEL RIO; TONY MEHRDAD SAGHEBIAN, individually and on behalf of all others similarly situated, | No. 15-17475 |
| *Plaintiffs-Appellees*, | D.C. No.<br>3:15-cv-03667-EMC |
| v. | |
| UBER TECHNOLOGIES, INC.; RASIER-CA, LLC, a Delaware Limited Liability Company, *Defendants-Appellants.* | |

| | |
|---|---|
| ABDUL KADIR MOHAMED, individually and on behalf of all others similarly situated, *Plaintiff-Appellee*, | No. 15-17533 |
| | D.C. Nos. |
| v. | 3:14-cv-05200-EMC 3:14-cv-05241-EMC 3:15-cv-03009-EMC |
| UBER TECHNOLOGIES, INC., *Defendant-Appellant*, | |
| and | |
| RASIER, LLC; HIREASE, LLC, *Defendants.* | |

| | |
|---|---|
| DOUGLAS O'CONNOR; THOMAS COLOPY; MATTHEW MANAHAN; ELIE GURFINKEL, individually and on behalf of all others similarly situated, *Plaintiffs-Appellants*, | No. 16-15000 |
| | D.C. No. 3:13-cv-03826-EMC |
| v. | |
| UBER TECHNOLOGIES, INC., *Defendant-Appellee.* | |

4                     O'CONNOR V. UBER

| | |
|---|---|
| HAKAN YUCESOY, on behalf of himself and others similarly situated,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>*Defendant-Appellee.* | No. 16-15001<br><br>D.C. No.<br>3:15-cv-00262-EMC |
| ABDUL KADIR MOHAMED, individually and on behalf of all others similarly situated; RONALD GILLETTE; SHANNON WISE; BRANDON FARMER; MEGHAN CHRISTENSON,<br>*Plaintiffs-Appellants*,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>*Defendant-Appellee.* | No. 16-15035<br><br>D.C. No.<br>3:14-cv-05200-EMC |

| | |
|---|---|
| DOUGLAS O'CONNOR; THOMAS COLOPY; MATTHEW MANAHAN; ELIE GURFINKEL, individually and on behalf of all others similarly situated,<br>*Plaintiffs-Appellees*,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>*Defendant-Appellant.* | No. 16-15595<br><br>D.C. No.<br>3:13-cv-03826-EMC<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted September 20, 2017
Submission Withdrawn September 22, 2017
Re-Submitted September 25, 2018
San Francisco, California

Filed September 25, 2018

Before: Richard C. Tallman, Richard R. Clifton,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Class Action / Arbitration

The panel reversed the district court's denial of Uber Technologies, Inc.'s motions to compel arbitration, reversed the district court's class certification orders, and reversed as moot and without foundation the district court's Fed. R. Civ. P. 23(d) orders in several putative class actions brought by current and former Uber drivers alleging violations of various federal and state statutes arising from Uber's classification of drivers as independent contractors rather than employees.

In *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1206 (9th Cir. 2016), the panel previously considered and reversed the district court's orders denying Uber's motion to compel arbitration.

The panel rejected plaintiffs' additional arguments in this current appeal alleging that the arbitration agreements were unenforceable. First, the plaintiffs argued that the lead plaintiffs in the *O'Connor* case constructively opted out of arbitration on behalf of the entire class. The panel held this was unpersuasive because nothing gave the *O'Connor* lead plaintiffs the authority to take that action on behalf of and binding other drivers, and the decision in *Bickerstaff v. Suntrust Bank*, 788 S.E.2d 787 (Ga. 2016), was not instructive where it relied exclusively on state law grounds and did not discuss the Federal Arbitration Act. Second, the plaintiffs argued that the arbitration agreements were

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

unenforceable because they contained class action waivers that violated the National Labor Relations Act of 1935. The panel held that this argument was rejected by the Supreme Court in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

The panel held that it had jurisdiction to review both the original class certification order and the December 9, 2015 certification order. The panel held that in the wake of the decision in *Mohamed*, the class certification orders must be reversed because they were premised upon the district court's conclusion that the arbitration agreements were not enforceable. The question whether those agreements were enforceable was not properly for the district court to answer because the question of arbitrability was designated to the arbitrator. The panel held that remand for further proceedings was appropriate, and leaving the existing class certification orders in place in the meantime was not appropriate.

The panel held that the district court's Fed. R. Civ. P. 23(d) orders must be reversed as moot and without foundation in light of the panel's reversal of the district court's orders denying the motions to compel arbitration and certifying the class.

## COUNSEL

Theodore J. Boutrous Jr. (argued), Theane D. Evangelis, and Kevin J. Ring-Dowell, Gibson Dunn & Crutcher LLP, Los Angeles, California; Joshua S. Lipshutz, Gibson Dunn & Crutcher LLP, San Francisco, California; for Defendants-Appellants.

Shannon Liss-Riordan (argued) and Adelaide H. Pagano, Lichten & Liss-Riordan P.C., Boston, Massachusetts, for Plaintiffs-Appellees.

Jeffery Burritt (argued), Attorney; Kira Dellinger Vol, Supervisory Attorney; Linda Dreeben, Deputy Associate General Counsel; John H. Ferguson, Associate General Counsel; Jennifer Abruzzo, Deputy General Counsel; Richard F. Griffin Jr., General Counsel; National Labor Relations Board, Washington, D.C.; for Amicus Curiae National Labor Relations Board.

Andrew J. Pincus, Evan M. Tager, and Archis A. Parasharami, Mayer Brown LLP, Washington, D.C.; Jed Glickstein, Mayer Brown LLP, Chicago, Illinois; Kate Comerford Todd and Warren Postman, U.S. Chamber Litigation Center Inc., Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

## OPINION

CLIFTON, Circuit Judge:

Current and former Uber drivers filed several putative class actions alleging on behalf of themselves and other drivers that Uber Technologies, Inc. and related defendants (collectively referred to as "Uber"), violated various federal and state statutes by, among other things, misclassifying drivers as independent contractors rather than employees. Multiple cases were consolidated for appeal to this court.[1] Uber appeals the district court's orders denying Uber's motions to compel arbitration, orders granting class certification in *O'Connor*, and orders controlling class communications pursuant to Federal Rule of Civil Procedure 23(d).

We previously considered and reversed the district court's orders denying Uber's motions to compel arbitration in *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1206 (9th Cir. 2016). Plaintiffs offer additional arguments in the current appeal why the arbitration agreements are unenforceable, but those arguments are unpersuasive. As the class certification by the district court was premised on the district court's determination that the arbitration agreements were unenforceable, the class certification must also be reversed. The Rule 23(d) orders were based on the district court's denial of the motions to compel arbitration and its

---

[1] The appeals were from four related actions pending before the same district court: (1) *O'Connor v. Uber Technologies, Inc.*, 3:13-cv-03826-EMC; (2) *Yucesoy v. Uber Technologies, Inc.*, 3:15-cv-00262-EMC; (3) *Mohamed v. Uber Technologies, Inc.*, 3:14-cv-05200-EMC; and (4) *Del Rio v. Uber Technologies, Inc.*, 3:15-cv-03667-EMC.

granting of class certification. As both of those decisions must be reversed, there is no longer a basis for the district court's restrictions on Uber's communication with class and putative class members, so these orders are moot and must be reversed as well.

## I.   Background

Two Uber drivers filed a putative class action complaint against Uber on August 16, 2013, initiating the *O'Connor* action. It alleged claims for failure to remit the entire gratuity paid by customers to drivers in violation of California Labor Code § 351 ("Tips Claim"), and for misclassifying the drivers as independent contractors and failing to pay their business expenses (including vehicles, gas, and maintenance) in violation of California Labor Code § 2802 ("Expense Reimbursement Claim").

Within a week of filing suit, the *O'Connor* Plaintiffs filed a motion under Rule 23(d) requesting that the district court declare the 2013 arbitration agreement unconscionable, or, in the alternative, requiring Uber to provide enhanced notice and opportunities for the drivers to opt out of arbitration. On December 6, 2013, the district court granted the *O'Connor* Plaintiffs' alternative request, enjoined Uber from enforcing its arbitration agreement against those drivers who entered into the agreement but did not opt out, required Uber to revise the agreement to include enhanced notice provisions, and directed Uber to extend the opt out period for an additional thirty days once the revised agreements were distributed. Uber's updated licensing agreement was issued on June 21, 2014. Uber also sent licensing agreements in November 2014 and April 2015 that were materially identical to the June 2014 agreement (collectively "2014 arbitration agreement").

Plaintiff Mohamed filed a putative class action complaint against Uber and Hirease, LLC, an independent company that conducts background checks, on November 24, 2014, asserting various federal and California state law claims. We have already provided background on that case in our decision in *Mohamed*, 848 F.3d at 1206–07. Here it is sufficient to note that the district court denied Uber's motion to compel arbitration pursuant to its 2013 and 2014 arbitration agreements, holding, among other things, that the arbitration provisions were unenforceable because they were unconscionable. Based on the same reasoning, the district court also denied Uber's motions to compel arbitration in *Yucesoy*, *Del Rio*, and *O'Connor*.

In April 2015, the *O'Connor* Plaintiffs moved for certification of a class of approximately 160,000 individuals who had driven for Uber in the state of California at any time since August 16, 2009. The district court granted class certification in part in an order filed on September 1, 2015, certifying the following class for the Plaintiffs' Tips Claim:

> All UberBlack, UberX, and UberSUV drivers who have driven for Uber in the state of California at any time since August 16, 2009, and who (1) signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary directly and in their individual name, and (3) did not electronically accept any contract with Uber or one of Uber's subsidiaries which contain the notice and opt-out provisions previously ordered by this Court (including those contracts listed in the Appendix to this Order),

*unless* the driver timely opted-out of that contract's arbitration agreement.

The district court excluded drivers who worked for a distinct third-party transportation company, or who contracted or were paid under corporate or fictitious names, out of concern that individualized issues would predominate if they were included. The district court, in addition, excluded any drivers who signed the Uber contracts that included enhanced notice and opt-out provisions previously ordered by the district court, unless the driver timely opted-out of the arbitration agreement. The district court declined to certify the *O'Connor* Plaintiffs' Expense Reimbursement Claim at that time because it was uncertain whether the *O'Connor* Plaintiffs could determine whether a particular expense was "necessary" on a classwide basis.

In response to a supplemental motion for class certification by the *O'Connor* Plaintiffs, the district court, on December 9, 2015, certified an additional subclass of Uber drivers including those who accepted arbitration agreements in 2014 and 2015:

> All UberBlack, UberX, and UberSUV drivers who have driven for Uber in the state of California at any time since August 16, 2009, and meet all the following requirements: (1) who signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary directly and in their individual name, and (3) electronically accepted any contract with Uber or one of Uber's subsidiaries which contain the notice

and opt-out provisions previously ordered by this Court, and did not timely opt out of that contract's arbitration agreement.

In the same order the district court also certified the original class and subclass to pursue the Expense Reimbursement Claim based on the *O'Connor* Plaintiffs' proposal to rely on the Internal Revenue Service's mileage reimbursement rate, which approximates a driver's necessary business expenses.

Uber issued a new arbitration agreement to all of its drivers on December 11, 2015. Plaintiffs in *O'Connor*, *Mohamed*, and *Yucesoy* filed separate motions to enjoin Uber from distributing and enforcing this new agreement and to enjoin any further communications by Uber to class and putative class members. The district court granted the motion in part on December 23, 2015, citing its authority under Federal Rule of Civil Procedure 23(d) to control communications by Uber to the class members and putative class members. Although the district court did not prohibit Uber from sending out arbitration agreements in the future (except to members of the *O'Connor* certified class), it ruled that: (1) the December 11, 2015 agreement shall have no effect on the rights of certified class members to pursue the claims certified in *O'Connor*; (2) its arbitration provision was not enforceable against non-class member drivers who had already agreed to it; (3) Uber had to issue a new version of the agreement with enhanced notice and opt out provisions and provide drivers with 30-days to decide to opt out or not; and (4) during the pendency of the Uber cases, all cover letters, notices and arbitration provisions given to new or prospective drivers had to be approved by the district court.

In *Mohamed*, 848 F.3d at 1210–12, we reversed the district court's denial of Uber's motion to compel arbitration.[2] We held that the relevant provisions in the respective agreements delegated the threshold question of arbitrability to the arbitrator, that the delegation provisions were not adhesive pursuant to California law and were therefore not procedurally unconscionable, and that the provisions permitting drivers to opt-out of arbitration were not illusory but provided the drivers with a meaningful opportunity to opt out. *Id.* at 1207–12.

In response to *Mohamed*, the district court terminated its December 23, 2015 Rule 23(d) order, and stated that "Uber is permitted to issue the December 2015 Agreement to new drivers without satisfying the enhanced notice provisions required by the Court" and current drivers as well. The district court refused to vacate the order retroactively, however, explaining that "it will not deem the December 2015 Agreement effective as to drivers who did not timely opt out of the arbitration agreement during the pendency of the Rule 23(d) orders," from December 10, 2015 to August 18, 2016.

Approximately a dozen appeals arising from these cases were filed with this court. They were consolidated for appeal, and supplemental consolidated briefing was ordered and received.

---

[2] In addition, we affirmed the district court's order as to the 2013 agreement's delegation of California's Private Attorneys General Act ("PAGA") claims to the arbitrator but noted that it was severable from the rest of the agreement and did not invalidate the rest of the arbitration provision. *Mohamed*, 848 F.3d at 1212–14.

## II. Motions to Compel Arbitration

An order denying a motion to compel arbitration is reviewed de novo. *See Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc). Underlying factual findings are reviewed for clear error. *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 917 (9th Cir. 2011). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Based on our decision in *Mohamed*, the district court's orders denying Uber's motions to compel arbitration must be reversed. Plaintiffs do not dispute the application of *Mohamed* regarding the issues our previous decision discussed to the other cases consolidated in the current appeal, but they argue that the arbitration agreements are unenforceable for two other reasons.

The first reason is that even if the arbitration agreements would otherwise be enforceable, Plaintiffs argue they are irrelevant here because the lead plaintiffs in *O'Connor* constructively opted out of arbitration on behalf of the entire class. The sole authority offered by Plaintiffs for this proposition is a Georgia Supreme Court decision, *Bickerstaff v. Suntrust Bank*, 788 S.E.2d 787 (Ga. 2016). The argument is unpersuasive for multiple reasons. Nothing gave the *O'Connor* lead plaintiffs the authority to take that action on behalf of and binding other drivers. Nor did *Bickerstaff* hold that individuals in the lead plaintiffs' position had the authority to make such an election for others. Perhaps more importantly, Plaintiffs provide no federal case law that has relied on *Bickerstaff*, nor could they. That decision rested

exclusively on state law grounds and did not discuss the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.

Section 2 of the FAA "requires courts to enforce agreements to arbitrate according to their terms," *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012), in order "to place an arbitration agreement upon the same footing as other contracts . . . and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985) (internal quotation marks and citation omitted).  To that end, section 2 declares that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  An arbitration-specific rule, such as the one set forth in *Bickerstaff*, would be preempted by the FAA.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341–43 (2011).  Plaintiffs' new argument provides no support for the district court's orders denying the motions to compel arbitration.

The second alternative argument offered by Plaintiffs is that the arbitration agreements are unenforceable because they contain class action waivers that violate the National Labor Relations Act of 1935 ("NLRA"), 29 U.S.C. §§ 151–169.  After oral argument, we withdrew submission of this consolidated appeal pending resolution by the Supreme Court of another case that posed a similar question.  The Court answered that question and rejected Plaintiffs'

argument in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).[3]

In sum, the district court's orders denying Uber's motions to compel arbitration in *O'Connor*, *Yucesoy*, and *Del Rio* must be reversed.

## III.    Class Certification

We have jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f) to review the district court's class certification orders in *O'Connor*.  Uber timely petitioned for and received permission to appeal both orders.

As a preliminary matter, Plaintiffs contend that our review should be limited to the December 9, 2015 certification order, arguing that the motions panel which granted permission to appeal in Appeal No. 15-80220 did not grant review of the original class certification order.  We can and will review both certification orders.  *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (the "court may address any issue fairly included within" an interlocutory order).  The December 9, 2015 order incorporated the Rule 23 analysis that the district court previously conducted in its September 1, 2015 order and expanded the class as a result of supplemental briefing related to issues raised in the earlier certification order.

---

[3] Following the Supreme Court's decision in *Epic Systems*, we obtained supplemental briefing from the parties.  Plaintiffs acknowledged that the Court's decision extinguished their argument that the arbitration agreements were not enforceable under the NLRA.

"[W]e first review a class certification determination for legal error under a de novo standard, and if no legal error occurred, we will proceed to review the decision for abuse of discretion." *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 629 (9th Cir. 2018) (alteration incorporated and internal quotation marks omitted).  A district court that applies "the correct legal standard abuses its discretion only if it (1) relies on an improper factor, (2) omits a substantial factor, or (3) commits a clear error of judgment in weighing the correct mix of factors." *Id.* (internal quotation marks omitted).  The district court's findings of fact are reviewed for clear error, and will be reversed "only if they are (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the record." *Id.* (internal quotation marks omitted).

In the wake of our decision in *Mohamed*, the class certification orders must be reversed.  Certification of the class by the district court, notably the court's determinations that the requirements of Rule 23 were satisfied, was premised upon the district court's conclusion that the arbitration agreements were not enforceable.  The class as certified includes drivers who entered into agreements to arbitrate their claims and to waive their right to participate in a class action with regard to those claims.  As we held in *Mohamed*, the question whether those agreements were enforceable was not properly for the district court to answer.  The question of arbitrability was designated to the arbitrator.  *Mohamed*, 848 F.3d at 1208–12.

In their most recent supplemental brief, Plaintiffs do not dispute that the basis for the class certification orders previously entered by the district court has been undermined by *Mohamed* and *Epic Systems*, among other decisions.

Plaintiffs argue that we should not disturb the existing class certification orders and should instead simply remand these cases to the district court for further consideration, so that it could consider certification of a class that might be defined differently based on some new analysis. Remand for further proceedings is appropriate, but leaving the existing class certification orders in place in the meantime is not. Those orders are reversed.

## IV. Rule 23(d) Orders

Reversing the class certification orders also leads us to set aside the Rule 23(d) orders. They were based on the district court's conclusion that a class could be certified and its desire to limit the effect of any new arbitration agreement on class or putative class members. As we have concluded that the district court's orders denying the motions to compel arbitration and certifying the class must both be reversed, the Rule 23(d) orders are moot and without foundation. They must be reversed as well.

## V. Conclusion

The district court's denial of Uber's motions to compel arbitration in *O'Connor*, *Yucesoy*, and *Del Rio* must be reversed, based on *Mohamed*. Because the arbitration agreements are enforceable, the district court's class certification orders in *O'Connor* must also be reversed. The orders entered by the district court under Rule 23(d) orders are moot and are thus reversed as well.

### REVERSED AND REMANDED.

# United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

(1)    A.    **Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

     B.    **Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

Exhibit A, Page 21

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
> ► The proceeding involves a question of exceptional importance; or
> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)     Deadlines for Filing:**

- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)     Statement of Counsel**

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)     Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*

- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published <u>opinion</u>, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** ..............................................................................................................*(Rev. 12-1-09)*

# United States Court of Appeals for the Ninth Circuit

# BILL OF COSTS

This form is available as a fillable version at:
*http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form%2010%20-%20Bill%20of%20Costs.pdf*.

<u>*Note:*</u> If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

|                          |     | v. |     | 9th Cir. No. |     |

The Clerk is requested to tax the following costs against:

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED *(Each Column Must Be Completed)* | | | | ALLOWED *(To Be Completed by the Clerk)* | | | |
|---|---|---|---|---|---|---|---|---|
|  | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| **Excerpt of Record** |  |  | $ | $ |  |  | $ | $ |
| **Opening Brief** |  |  | $ | $ |  |  | $ | $ |
| **Answering Brief** |  |  | $ | $ |  |  | $ | $ |
| **Reply Brief** |  |  | $ | $ |  |  | $ | $ |
| **Other\*\*** |  |  | $ | $ |  |  | $ | $ |
|  |  |  | **TOTAL:** $ | | | | **TOTAL:** $ | |

\* *Costs per page*: May not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* *Other*: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page*

Exhibit A, Page 24

**Form 10. Bill of Costs -** *Continued*

I, [                    ] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [                    ]

("s/" plus attorney's name if submitted electronically)

Date [                ]

Name of Counsel: [                    ]

Attorney for: [                    ]

---

*(To Be Completed by the Clerk)*

Date [                    ]     Costs are taxed in the amount of $ [                ]

Clerk of Court

By: [                    ] , Deputy Clerk

# Exhibit B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIKOLA LOVIG,

            Plaintiff,

    v.

BEST BUY STORES LP, et al.,

            Defendants.

Case No.  18-cv-02807-PJH

**ORDER COMPELLING ARBITRATION AND STAYING CASE**

Re: Dkt. No. 15

**BACKGROUND**

       Plaintiff Nikola Lovig was an employee of defendant Best Buy Stores, L.P. ("Best Buy Stores") from approximately April 24, 2004 until May 12, 2017.  First Amended Complaint ("FAC"), Dkt. 14 ¶ 21; Dkt. 16 ("Sipprell Decl.") ¶ 3.  On April 3, 2018, plaintiff brought an action against Best Buy Stores and Best Buy Co., Inc. (together "Best Buy") as a putative class action on behalf of "[a]ll persons employed by Defendants and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the Relevant Time Period."  Dkt. 1-1 (Compl.) ¶ 12.  The state court complaint alleged the following causes of action:  (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay hourly wages, (4) failure to provide accurate written wage statements, (5) failure to timely pay all final wages, and (6) unfair compensation.  See Compl.  On July 10, 2018, plaintiff filed a FAC, adding a seventh cause of action under the Private Attorneys General Act, Cal. Lab. Code §§ 2698, et seq. ("PAGA").  See FAC.

       Effective March 15, 2016, while plaintiff was employed by Best Buy Stores,

1   defendants implemented an arbitration policy.  Sipprell Decl. ¶ 4 & Ex. A at 1[1] (the

2   "Arbitration Policy" or "Arbitration Agreement").  Agreeing to the terms of the Arbitration

3   Policy was a "mandatory condition of initial and continuing employment at Best Buy" for

4   plaintiff.  Sipprell Decl., Ex. A at 1.  The Arbitration Policy provided that "by . . . remaining

5   employed . . . employees agree to this Policy's terms."  Id.  Best Buy Stores provided

6   plaintiff and all employees with access to a document entitled "Arbitration Policy

7   Frequently Asked Questions (FAQs)," which provides that, "[a]s with any other Best Buy

8   policy, by remaining employed, employees are considered to have agreed to the policy."

9   Sipprell Decl. ¶ 6 & Ex. B at 1.  Prior to implementation of the Arbitration Policy, Best Buy

10  Stores posted the policy to an intranet site that contains Best Buy Stores' human

11  resources policies.  Sipprell Decl. ¶ 5.

12        Over five months later, on August 28, 2016, plaintiff's manager gave plaintiff a list

13  of online training modules for plaintiff to complete, including an information module about

14  the Arbitration Policy.  Dkt. 22-1 ("Lovig Decl.") ¶ 5.  Plaintiff completed all of the training

15  modules except the one covering arbitration.  Id. ¶ 6.  Plaintiff at that time told his

16  manager, Richard Arganda, that he didn't agree with arbitration agreements and wouldn't

17  sign one with Best Buy.  Id.  Arganda then went to confer with another manager, Michelle

18  Garcia, who plaintiff believed to be a more senior manager.  Id.  Plaintiff alleges that

19  Arganda then told plaintiff that "there are no issues with my [plaintiff's] refusal to complete

20  the training covering the arbitration agreement."  Id.

21        In a retaliation complaint plaintiff filed with the California Labor Commissioner's

22  Office, Retaliation Complaint Investigation Unit, at some point during or before

23  September 2016, plaintiff alleged that, "[b]y implementing the 'Arbitration Policy' they are

24  able to force me to quit the company or waive my right to sue" and "[b]y making other

25  employees agree to the 'Arbitration Policy' or be fired, they position themselves to

26  impede/prevent me from starting a class action lawsuit against them[.]"  Sipprell Decl. ¶ 9

27  ───────────────

28  [1] Citations to the Arbitration Policy refer to page numbers 1–6, indicated in the upper-right
    corner of the document.

& Ex. D.

On or about February 22, 2017, plaintiff was approached by another manager, Dragos Damien, who instructed plaintiff to complete several online training modules, pointing out specifically the training module covering the arbitration policy. Lovig Decl. ¶ 7. Plaintiff once again completed all of the training programs except the one covering arbitration. Id. Later that day, Damien asked plaintiff whether he completed the arbitration training program. Id. ¶ 8. Plaintiff informed Damien that he discussed this issue with other managers and that he would not complete the arbitration training module as he was not willing and had no desire to sign an arbitration agreement. Id.

Through the date of his termination on May 12, 2017, plaintiff had not signed any arbitration agreement with defendants.[2] Id. ¶¶ 2, 10; FAC ¶ 21. Plaintiff claims that he was never made aware that by remaining employed with defendants, he was agreeing to an arbitration agreement. Id. ¶ 11.

On April 3, 2018, plaintiff filed a complaint in Alameda County Superior Court. On May 3, 2018, defendants provided plaintiff's counsel with materials regarding the Arbitration Policy and requested that plaintiff stipulate to arbitrate his claims on an individual basis and dismiss the complaint. Dkt. 15-1 ¶ 2 & Ex. 1. Plaintiff's counsel did not respond.

On May 11, 2018, defendants removed the case to this court. Dkt. 1. On July 10, 2018, plaintiff filed the FAC, adding the PAGA cause of action. See FAC.

## DISCUSSION

Defendants move this court for an order compelling plaintiff to arbitrate certain of his claims, dismissing plaintiff's class claims, and staying plaintiff's PAGA claim pending arbitration. The court addresses each request in turn.

**A.    Whether Plaintiff Must Arbitrate His Claims**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., any party bound

---

[2] Neither plaintiff's nor defendants' counsel was aware whether plaintiff was fired or quit, and the complaint is also silent on the issue.

1  to an arbitration agreement that falls within the scope of the FAA may bring a motion in

2  federal district court to compel arbitration and stay the proceeding pending resolution of

3  the arbitration.  9 U.S.C. §§ 2–4; see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.,

4  363 F.3d 1010, 1012 (9th Cir. 2004); Circuit City Stores, Inc. v. Adams, 532 U.S. 105,

5  119 (2001) (addressing the FAA's applicability to employment contracts).  The FAA

6  requires the court to compel arbitration of issues covered by the arbitration agreement.

7  Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 217 (1985).

8  In ruling on a motion to compel arbitration under the FAA, the court's role is

9  "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does,

10  (2) whether the agreement encompasses the dispute at issue."  Chiron Corp. v. Ortho

11  Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); Lifescan., 363 F.3d at 1012.  If

12  the answers are yes, the court must enforce the agreement.  Id.

13  Regarding whether an agreement exists to arbitrate, the "first principle" that

14  underlies the U.S. Supreme Court's arbitration decisions is that "[a]rbitration is strictly a

15  matter of consent" and thus "is a way to resolve those disputes—but only those

16  disputes—that the parties have agreed to submit to arbitration."  Granite Rock Co. v. Int'l

17  B'hd of Teamsters, 561 U.S. 287, 299 (2010) (internal quotation marks and citations

18  omitted); see also First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995).  Thus,

19  "a court may order arbitration of a particular dispute only where the court is satisfied that

20  the parties agreed to arbitrate that dispute."  Granite Rock, 561 U.S. at 297.

21  Regarding the validity of the agreement, the FAA provides that arbitration clauses

22  "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

23  equity for the revocation of any contract."  9 U.S.C. § 2.  Thus, state contract defenses

24  may be applied to invalidate arbitration clauses if those defenses apply to contracts

25  generally.  Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); Circuit City

26  Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (state law defense, such as

27  unconscionability, that applies to contracts generally may also invalidate an arbitration

28  agreement).  "The party seeking arbitration bears the burden of proving the existence of

United States District Court
Northern District of California

4

1  an arbitration agreement, and the party opposing arbitration bears the burden of

2  proving any defense, such as unconscionability." Pinnacle Museum Tower Assn. v.

3  Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012).

4      Regarding the scope of the agreement, "any doubts concerning the scope of

5  arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp.

6  v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). Nevertheless, a motion to compel

7  arbitration should be denied if "it may be said with positive assurance that the arbitration

8  clause is not susceptible of an interpretation that covers the asserted dispute." AT&T

9  Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986).

10      **1.    Whether the Parties Entered into An Arbitration Agreement**

11      The parties dispute whether they entered into an arbitration agreement. Plaintiff

12  argues that he never read or assented to the agreement's terms, so he never accepted or

13  entered into the agreement. Defendants argue that plaintiff did in fact know the

14  agreement's terms, and he accepted the Arbitration Policy in the manner specified in the

15  policy—by continuing to work.

16      "While the FAA requires a writing, it does not require that the writing be signed by

17  the parties." Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1439 (9th Cir. 1994) (internal

18  quotation marks omitted). The court applies "ordinary state-law principles that govern the

19  formation of contracts to decide whether an agreement to arbitrate exists." Norcia v.

20  Samsung Telecommunications Am., LLC, 845 F.3d 1279, 1283–84 (9th Cir. 2017)

21  (internal quotation marks omitted). Here, the parties agree that California law governs

22  the issue of contract formation. "In discerning California law, we are bound by the

23  decisions of the California Supreme Court, 'including reasoned dicta.'" Id. at 1284

24  (quoting Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 219 (9th Cir. 2013)). "We

25  generally will 'follow a published intermediate state court decision regarding California

26  law unless we are convinced that the California Supreme Court would reject it.'" Id.

27  (quoting Muniz, 738 F.3d at 219).

28      A contract to arbitrate will not be inferred absent a "clear agreement." Davis v.

5

1    Nordstrom, Inc., 755 F.3d 1089, 1092 (9th Cir. 2014) (quoting Avery v. Integrated

2    Healthcare Holdings, Inc., 218 Cal. App. 4th 50, 59 (2013)).  A "clear agreement" to

3    arbitrate may be either express or implied in fact.  Davis, 755 F.3d at 1093.

4        In California, "mutual consent is gathered from the reasonable meaning of the

5    words and acts of the parties, and not from their unexpressed intentions or

6    understanding." Reigelsperger v. Siller, 40 Cal. 4th 574, 579–80 (2007) (quoting 1

7    Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 116, p. 155).  "[T]he terms of a

8    contract ordinarily are to be determined by an external, not an internal, standard; the

9    outward manifestation or expression of assent is the controlling factor." Windsor Mills,

10   Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 992 (1972).  "Although mutual

11   consent is a question of fact, whether a certain or undisputed state of facts establishes a

12   contract is a question of law for the court." Deleon v. Verizon Wireless, LLC, 207 Cal.

13   App. 4th 800, 813 (2012).

14       As a general rule, "silence or inaction does not constitute acceptance of an

15   offer. . . .  There are exceptions to this rule, however. . . .  An offeree's silence may . . . be

16   treated as consent to a contract when the party retains the benefit offered." Norcia, 845

17   F.3d at 1284 (quoting Golden Eagle Ins. Co. v. Foremost Ins. Co., 20 Cal. App. 4th 1372,

18   1385 (1993)).  "Even if there is an applicable exception to the general rule that silence

19   does not constitute acceptance, courts have rejected the argument that an offeree's

20   silence constitutes consent to a contract when the offeree reasonably did not know that

21   an offer had been made." Norcia, 845 F.3d at 1285.  "[A]n offeree, regardless of

22   apparent manifestation of his consent, is not bound by inconspicuous contractual

23   provisions of which he was unaware, contained in a document whose contractual nature

24   is not obvious." Windsor Mills, 25 Cal. App. 3d at 993.

25       However, when an offer is accepted, "[a] party who is bound by a contract is

26   bound by all its terms, whether or not the party was aware of them.  'A party cannot avoid

27   the terms of a contract on the ground that he or she failed to read it before signing.'"

28   Norcia, 845 F.3d at 1284 (quoting Marin Storage & Trucking, Inc. v. Benco Contracting &

United States District Court
Northern District of California

6

1   Eng'g, Inc., 89 Cal. App. 4th 1042, 1049 (2001)); accord Pinnacle Museum, 55 Cal. 4th at

2   236 ("An arbitration clause within a contract may be binding on a party even if the party

3   never actually read the clause."); Windsor Mills, 25 Cal. App. 3d at 992 ("an offeree,

4   knowing that an offer has been made to him but not knowing all of its terms, may be held

5   to have accepted, by his conduct, whatever terms the offer contains").

6           In the employment context, "acceptance of an agreement to arbitrate may be

7   express . . . or implied-in-fact where . . . the employee's continued employment

8   constitutes her acceptance of an agreement proposed by her employer." Craig v. Brown

9   & Root, Inc., 84 Cal. App. 4th 416, 420 (internal citations omitted); see also Bayer v.

10  Neiman Marcus Holdings, Inc., 582 Fed. App'x. 711, 713 (9th Cir. 2014). "Where an

11  employee continues in his or her employment after being given notice of the changed

12  terms or conditions, he or she has accepted those new terms or conditions." Davis, 755

13  F.3d at 1093 (applying California law); see also Asmus v. Pac. Bell, 23 Cal. 4th 1, 15

14  (2000) ("Plaintiffs' continued employment constituted acceptance of the offer of the

15  modified unilateral contract."). An employer need not inform an employee "that her

16  continued employment after receiving the letter [containing a new policy] constituted

17  acceptance of new terms of employment." Davis, 755 F.3d at 1094 (California does not

18  "require that employees must be expressly told that continued employment constitutes

19  acceptance").

20          Regarding employer changes to arbitration policies, courts have found that

21  providing employees with reasonable notice of the policy, and an employee continuing to

22  work after such notice, is sufficient to form an arbitration agreement. See Davis, 755

23  F.3d at 1094 ("Nordstrom satisfied the minimal requirements under California law for

24  providing employees with reasonable notice of a change to its employee handbook by

25  sending a letter to Davis and other employees informing them of the modification, and not

26  seeking to enforce the arbitration provision during the 30 day notice period."); Craig, 84

27  Cal. App. 4th at 420–22 (employer provided copies of its arbitration policy to the plaintiff

28  employee, who never signed an acknowledgment nor otherwise expressly agreed to be

7

United States District Court
Northern District of California

1  bound by the policy, yet because the arbitration policy was "received by Craig in 1993

2  and again in 1994[, and] she continued to work for Brown & Root until 1997 . . . she

3  thereby agreed to be bound by the terms"); Aquino v. Toyota Motor Sales USA, Inc.,

4  Case No. 15-cv-05281-JST, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) ("an

5  implied-in-fact agreement exists between Toyota and Ms. Aquino to arbitrate the claims

6  at issue" because, "[a]s in Craig, Ms. Aquino had notice of Toyota's implementation of the

7  arbitration agreement, and she continued to work for Toyota after the Agreement went

8  into effect" despite the fact that "she did not sign the Agreement because she did not

9  agree to it").

10       In Craig, the employee (named Craig) filed a sworn declaration that she "did not

11  receive any of these documents [containing the arbitration provision] at my residence in

12  Baldwin Park during the years 1993 or 1994."  Craig, 84 Cal. App. 4th at 420.  The court

13  considered competing "declarations and documents showing that the items were mailed

14  to Craig at her home address and not returned[.]"  Id. at 421.  Weighing the evidence, the

15  court determined that Craig did in fact receive the documents mailed to her.  The

16  appellate court affirmed the finding of a valid arbitration agreement, finding that "there is

17  substantial evidence (1) that the memorandum and brochure [containing the arbitration

18  provision] were received by Craig in 1993 and again in 1994; (2) that she continued to

19  work for Brown & Root until 1997; and (3) that she thereby agreed to be bound by the

20  terms of the Dispute Resolution Program, including its provision for binding arbitration."

21  Id. at 422.

22       In Aquino, 2016 WL 3055897, at *4, the employer Toyota sent communications

23  containing the arbitration policy by email and mail such that "Aquino had notice of

24  Toyota's implementation of the arbitration agreement, and she continued to work for

25  Toyota after the Agreement went into effect."  Id.  Aquino argued that "she thought that

26  she would have to sign the Agreement to make it effective, and that she did not sign the

27  Agreement because she did not agree to it."  Id.  She also argued that she never

28  expressed "intentional communication of assent."  Id.  But neither did she "ever attempted

8

1   to communicate her lack of consent to the Agreement to Toyota in any way." Id. The

2   court stated that "mutual consent is gathered from the reasonable meaning of the words

3   and acts of the parties, and not from their unexpressed intentions or understanding." Id.

4   It was "undisputed that Ms. Aquino received the Agreement (at least via email), that she

5   failed to opt out of it, . . . that she continued to work at Toyota after the Agreement went

6   into effect," and that she never "attempted to communicate her lack of consent to the

7   Agreement to Toyota in any way." Id. The court found that "[u]nder California law, these

8   facts establish an enforceable agreement between Ms. Aquino and Toyota." Id.

9         Here, the parties do not dispute that Best Buy gave Lovig notice that it was

10   instituting a new arbitration policy. Prior to its implementation on March 15, 2016, Best

11   Buy posted the Arbitration Policy to an intranet site that contains Best Buy Stores' human

12   resources policies, and it posted documentation and a training module explaining the

13   Arbitration Policy to the same site. Sipprell Decl. ¶¶ 5–6. Plaintiff had access to those

14   training materials, and he in fact knew that training about the Arbitration Policy was

15   available to him as early as January 2016. Lovig Decl. ¶ 3. Although he knew how to

16   access and review those materials beginning in January 2016, plaintiff elected not to

17   review them. Id. ¶¶ 3–4. It is also clear that by September 2016, plaintiff actually did

18   know some of the specific terms of the Arbitration Policy, including that it would "force me

19   [Lovig] to quit the company or waive my [Lovig's] right to sue[.]" Sipprell Decl., Ex. D at 2.

20         These actions, and the availability of the Arbitration Policy on the intranet, were

21   clearly sufficient to provide Lovig with notice of the new policy. E.g., Craig, 84 Cal. App.

22   4th at 420; Aquino, 2016 WL 3055897, at *4. Lovig was presented with the Arbitration

23   Policy and was given ample notice about it and its terms. The policy specifically stated

24   that continued employment constituted agreement to its terms. Sipprell Decl., Ex. A at 1.

25   Lovig remained employed by Best Buy over five months beyond the effective date of the

26   policy without raising any objection to it.[3] "Where an employee continues in his or her

27

28   [3] Notably, Lovig does not claim that he attempted to reject the Arbitration Policy any time prior to August 28, 2016—more than five months after the policy had gone into effect and

9

employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions." Davis, 755 F.3d at 1093. Lovig's continued employment expressed agreement to and acceptance of the Arbitration Policy, even if Lovig had not known that his actions constituted acceptance. Davis, 755 F.3d at 1094 (California does not "require that employees must be expressly told that continued employment constitutes acceptance"). Lovig's unexpressed intentions or understandings about the policy cannot negate his outward expression of assent to its terms.

### 2. Whether the Arbitration Policy is Valid and Enforceable

Plaintiff argues that the Arbitration Policy is unenforceable because it is illusory, defendants violated a covenant of good faith and fair dealing when implementing it, and it is unconscionable.

#### a. Whether It Is Illusory

"[I]f a promise is expressly made conditional on something that the parties know cannot occur, no real promise has been made. Similarly, one who states 'I promise to render a future performance, if I want to when the time arrives,' has made no promise at all. . . . Thus, an unqualified right to modify or terminate the contract is not enforceable. But the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice." Asmus, 23 Cal. 4th at 15–16 (finding a contract not illusory where "the promise was not optional with the employer and was fully enforceable until terminated or modified").

Plaintiff argues that defendants unilaterally imposed an arbitration policy that included an onerous retroactivity term. By doing so, the Arbitration Policy was illusory under the circumstances. Opp. at 5.

As in Asmus, 23 Cal. 4th at 15–16, the Arbitration Policy here is not illusory

---

at least eight months after he first had notice of it. The court does not express an opinion about whether Lovig's attempt to reject the Arbitration Policy would have been effective if made within a reasonable time following the notice.

United States District Court
Northern District of California

1    because its terms are not optional with Best Buy, and both Best Buy and Lovig are bound

2    to the policy so long as it is in force.  Best Buy remains bound by the Arbitration Policy

3    with respect to plaintiff unless the parties agree otherwise.  Because Best Buy has not

4    reserved for itself the unfettered right to terminate or modify the policy, it is not illusory.

5               **b.     Whether It Violated the Covenant of Good Faith and Fair Dealing**

6               "It has long been recognized in California that '[t]here is an implied covenant of

7    good faith and fair dealing in every contract that neither party will do anything which will

8    injure the right of the other to receive the benefits of the agreement.'"  Kransco v. Am.

9    Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000) (quoting Comunale v. Traders

10   & General Ins. Co., 50 Cal. 2d 654, 658 (1958)).

11              Plaintiff argues that "defendants created an agreement and imposed retroactivity

12   as a term.  Such behavior is quintessentially unfair in that is modifies the existing

13   employment arrangement between Plaintiff and Defendants in a manner wholly unfair,

14   depriving Plaintiff of the prior rights he held."  Opp. at 7.

15              Plaintiff's argument presumes that the Arbitration Policy modified the existing

16   employment arrangement between the parties unfairly because it applies retroactively.

17   First, plaintiff does not identify any terms of any prior employment arrangement.  But this

18   argument requires that the duty of good faith under a prior contract was breached by the

19   Arbitration Policy.  Plaintiff does not identify any terms of a prior contract that were

20   frustrated by the Arbitration Policy.

21              Second, companies and employees can contract with each other to require

22   arbitration.  Such contracts are not required to be entered into on the date of an

23   employee's hire.  Here, the agreement was entered into sometime after Lovig began

24   working for Best Buy.  In those circumstances, such an agreement will necessarily

25   change the parties' relationship.  But not every such change violates the covenant of

26   good faith and fair dealing of a prior contract.  Parties can contract to arbitrate even past

27   disputes.  See, e.g., DeVries v. Experian Info. Sols., Inc., Case No. 16-cv-02953-WHO,

28   2017 WL 733096, at *8 (N.D. Cal. Feb. 24, 2017); In re Verisign, Inc., Derivative Litig.,

United States District Court
Northern District of California

531 F. Supp. 2d 1173, 1223–24 (N.D. Cal. 2007).

### c. Whether It Is Unconscionable

Under California law, courts may refuse to enforce any contract found "to have been unconscionable at the time it was made" and may "limit the application of any unconscionable clause." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 340 (2011). "The party resisting arbitration bears the burden of proving unconscionability. Both procedural unconscionability and substantive unconscionability must be shown, but they need not be present in the same degree and are evaluated on a sliding scale. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Pinnacle Museum, 55 Cal. 4th at 247 (citations and internal quotation marks omitted).

"To determine whether the arbitration agreement is procedurally unconscionable the court must examine the manner in which the contract was negotiated and the circumstances of the parties at that time." Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1171 (9th Cir. 2003) (internal quotation marks omitted). "[P]rocedural unconscionability requires oppression or surprise. Oppression occurs where a contract involves lack of negotiation and meaningful choice[.]" Pinnacle Museum, 55 Cal. 4th at 247 (citations and internal quotation marks omitted). "A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract." Ingle, 328 F.3d at 1171. "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." Id.; Pinnacle Museum, 55 Cal. 4th at 247.

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to 'shock the conscience." Pinnacle Museum,

Exhibit B, Page 37

United States District Court
Northern District of California

55 Cal. 4th at 246 (citations and internal quotation marks omitted). An arbitration agreement must call for arbitration that "meet[s] certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." Craig, 84 Cal. App. 4th at 422; accord Wherry v. Award, Inc., 192 Cal. App. 4th 1242, 1248 (2011) ("To be valid, at minimum the arbitration agreement must require a neutral arbitrator, sufficient discovery, and a written decision adequate enough to allow judicial review.").

Procedurally, the Arbitration Agreement was unconscionable. It was not negotiated—it was presented as take-it-or-leave-it. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 115 (2000) (employment contract procedurally unconscionable where it "was imposed on employees as a condition of employment and there was no opportunity to negotiate"). As such, it was oppressive because it involved lack of negotiation or meaningful choice. Moreover, it was oppressive because the parties had a stark disparity in bargaining power. The employee being told to accept or quit precluded any meaningful opportunity to negotiate the terms of the agreement.

Regarding surprise, there was no surprise. The terms of the agreement were not buried or hidden, and Best Buy brought them to plaintiff's attention repeatedly.

Substantively, the Arbitration Agreement is not unconscionable. Plaintiff argues, without citation to any authority, that any arbitration agreement that applies retroactively is substantively unconscionable. However, that position does not accord with California law. See, e.g., DeVries, 2017 WL 733096, at *8 ("Courts have also consistently applied arbitration agreements retroactively"); In re Verisign, Inc., Derivative Litig., 531 F. Supp. 2d at 1223–24 (N.D. Cal. 2007) (applying arbitration agreement retroactively). Plaintiff does not identify any other source of substantive unconscionability, nor can the court find any. See Craig, 84 Cal. App. 4th at 422 (arbitration requires "neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Because plaintiff must show both procedural and substantive unconscionability—

2  and he fails to do so—the agreement is not unconscionable, even when recognizing the

3  procedural oppression and applying a sliding scale.

4       **3.    Whether the Claims at Issue Fall Within the Scope of the Agreement**

5    The Arbitration Policy was effective March 15, 2016, by its own terms.  Sipprell

6  Decl. ¶ 4 & Ex. A at 1.  The complaint asserts a relevant time period beginning four years

7  prior to the filing of this action.  FAC ¶ 13.  Therefore, the current allegations concern

8  time periods both before and after the Arbitration Policy was implemented.  Defendants

9  argue that the Arbitration Policy applies retroactively, prior to the date it was

10  implemented.  Plaintiff argues that the court should reject the retroactivity term, as it

11  would destroy plaintiff's rights in claims that had already accrued.

12    "[W]hen examining the scope of an arbitration agreement, as with any other

13  contract dispute, we first look to the express terms of the parties' agreement.  If the text is

14  plain and unambiguous, that is the end of our analysis in this case because we must

15  rigorously enforce arbitration agreements according to their terms[.]"  United States ex

16  rel. Welch v. My Left Foot Children's Therapy, LLC, 871 F.3d 791, 796 (9th Cir. 2017)

17  (internal quotation marks and citations omitted).  That includes language applying

18  arbitration agreements retroactively, to cover disputes arising prior to the agreement

19  itself.  In re Verisign, Inc., Derivative Litig., 531 F. Supp. 2d at 1223–24; DeVries, 2017

20  WL 733096, at *8 ("Courts have also consistently applied arbitration agreements

21  retroactively where the agreements . . . facially apply to disputes arising prior to the

22  agreement.");  cf. Castro v. ABM Indus., Inc., Case No. 17-cv-3026-YGR, 2018 WL

23  2197527, at *4 (N.D. Cal. May 14, 2018) (arbitration clause applying to "all Covered

24  Claims, *whenever they arise*" facially applied only to present and future, but not past,

25  conduct).  Doubts or ambiguities must be resolved in favor of arbitration.  Moses H. Cone

26  Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25.

27    Here, the Arbitration Policy unambiguously applies to "past, present or future

28  Claims between an Employee/former Employee or applicant and Best Buy, that arise out

14

of or relate in any way to the applicant's or Employee's employment application, employment and/or termination of employment with Best Buy[.]"  Sipprell Decl., Ex. A at 2.  Elsewhere, the policy states that it "requires that . . . Employees bring in arbitration, rather than in court, any past, present or future claims, disputes, or lawsuits[.]"  Id. at 1. The terms are clear on their face, and the Arbitration Policy applies retroactively.

**B.**  **Whether to Dismiss Plaintiff's Class Claims**

Defendants ask the court to dismiss plaintiff's class claims, arguing that the Arbitration Policy contains a class and collective action waiver.  Mot. at 12–13.  Although the Arbitration Policy requires disputes about what is arbitrable to be decided in arbitration, that requirement "does not apply to the class and collective action waiver and/or representative action waiver."  Sipprell Decl., Ex. A at 6.  Plaintiff's sole objection to defendants' motion to dismiss class claims is that it "depends upon the request to compel arbitration" and "must be denied when the motion to compel arbitration is denied." Opp. at 11.  As the motion to compel arbitration is granted, plaintiff raises no viable objection to defendants' motion to dismiss class claims.

Because plaintiff agreed to arbitrate any and all non-PAGA claims on an individual basis only (Sipprell Decl., Ex. A at 4–5), plaintiff's class claims are DISMISSED WITH PREJUDICE.

**C.**  **Whether to Stay Proceedings Before this Court**

**1.**  **Arbitrable Claims**

Title 9 U.S.C. § 3 provides that "the court . . . upon being satisfied that the issue . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"  That provision requires that plaintiff's arbitrable claims be stayed during arbitration.  Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1057 (9th Cir. 2013); 9 U.S.C. § 3.  Because the Arbitration Agreement is valid, and the dispute falls within its terms, the court must stay further proceedings of the arbitrable claims pending arbitration. Kilgore, 718 F.3d at 1057 (9 U.S.C. § 3 "require[es] stay of civil action during arbitration").

15

1       **2.**    **PAGA Claim**

2       A court may stay proceedings as part of its inherent power "to control the

3 disposition of the causes on its docket with economy of time and effort for itself, for

4 counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Use of this

5 power "calls for the exercise of judgment, which must weigh competing interests and

6 maintain an even balance." Id. at 254–55; see also Mediterranean Enterprises, Inc. v.

7 Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983) ("the district court did not abuse

8 its discretion by staying the action pending receipt of the results of arbitration").

9       In determining whether it should exercise its discretion to grant a stay, the court

10 should consider "the possible damage which may result from the granting of a stay, the

11 hardship or inequity which a party may suffer in being required to go forward, and the

12 orderly course of justice measured in terms of the simplifying or complicating of issues,

13 proof, and questions of law which could be expected to result from a stay." CMAX, Inc. v.

14 Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254–55).

15       Taking the above considerations into account, the court finds that it is appropriate

16 to stay plaintiff's PAGA claim. See, e.g., McGill v. Citibank, 2 Cal. 5th 945, 966 (2017)

17 ("case law establishes that a stay of proceedings as to any inarbitrable claims is

18 appropriate until arbitration of any arbitrable claims is concluded"); Franco v. Arakelian

19 Enterprises, Inc., 234 Cal. App. 4th 947, 966 (2015) (compelling arbitration and staying

20 PAGA claims pending arbitration); Shepardson v. Adecco USA, Inc., Case No. 15-cv-

21 05102-EMC, 2016 WL 1322994, at *6 (N.D. Cal. Apr. 5, 2016) (staying PAGA claim

22 pending the outcome of arbitration of the plaintiff's individual Labor Code claims);

23 Cobarruviaz v. Maplebear, Inc., 143 F. Supp. 3d 930, 947 (N.D. Cal. 2015) (staying

24 PAGA claim pending outcome of arbitration of the plaintiff's individual claims); Jacobson

25 v. Snap-on Tools Co., Case No. 15-cv-02141-JD, 2015 WL 8293164, at *6 (N.D. Cal.

26 Dec. 9, 2015) (same).

27                   **CONCLUSION**

28       For the foregoing reasons, plaintiff is hereby COMPELLED TO ARBITRATE ON

United States District Court
Northern District of California

16

1    AN INDIVIDUAL BASIS claims one through six of his First Amended Complaint for failure

2    to provide meal periods; failure to provide rest periods; failure to pay hourly wages; failure

3    to provide accurate written wage statements; failure to timely pay all final wages; and

4    unfair competition.  The entire action is hereby STAYED pending resolution of the

5    arbitration.  Plaintiff's class claims are hereby DISMISSED WITH PREJUDICE.

6         **IT IS SO ORDERED.**

7    Dated:  August 28, 2018

8    _____

9    PHYLLIS J. HAMILTON
     United States District Judge