JS-6
STAY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SANFILIPPO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TINDER, INC., a Delaware corporation, and DOES 1 through 20, Inclusive<br><br>Defendants. | Case No.  2:18-cv-08372-AB (JEMx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

Before the Court is Plaintiff Elizabeth Sanfilippo's ("Plaintiff") Motion to Remand and Defendant Match Group, LLC's ("Defendant", formerly "Tinder Inc.") Motion to Compel Arbitration.  Dkt. Nos. 13, 18.  The Court heard oral arguments regarding the motions on November 30, 2018.  For the following reasons, the Court **DENIES** Plaintiff's Motion to Remand and **GRANTS** Defendant's Motion to Compel Arbitration.

I. **BACKGROUND**

   **A. Plaintiff's Motion to Remand**

On August 20, 2018, Plaintiff filed its Complaint ("Complaint") in the Superior Court for the County of Los Angeles against Defendant relating to Plaintiff's alleged

1.

wrongful termination. On September 27, 2018 Defendant Match Group, LLC successor by merger with Tinder Inc., filed a Notice of Removal pursuant to 28 U.S.C. 1332 based on diversity of citizenship. On November 9, 2018, Plaintiff filed its Motion to Remand. In its motion, Plaintiff alleges that she was hired by Tinder, Inc., a Delaware corporation with its headquarters in West Hollywood, California ("Tinder"). Mot. to Remand p. 1.

Plaintiff is a resident of Los Angeles County, California. Complaint ¶1. Plaintiff argues that under Delaware law, Tinder, [1] a dissolved corporation, continued to exist for the purposes of the lawsuit and, therefore, there was not complete diversity. Mot. to Remand p. 4. Defendant filed an opposition asserting that Tinder was the incorrect party to the lawsuit because as of July 13, 2017 Tinder merged into Match Group, Inc. Tinder Opp. p.3, Braddock Decl., ¶6. Defendant argues that Tinder is not currently undergoing dissolution—as Plaintiff claims—but rather was merged into Match Group, Inc. and ceased to exist as a separate corporate entity. *Id.* ¶7. Plaintiff filed a reply reasserting that Tinder was the proper party for the suit because it is a dissolved corporation.

### B. Defendant's Motion to Compel Arbitration

On October 24, 2018, Defendant filed a motion to compel arbitration and dismiss or stay proceedings. Defendant claims that after the merger, Plaintiff signed a Mutual Arbitration Agreement (the "Agreement") and consented to resolve disputes through Defendant's ADR Program. The Agreement provides that, except as otherwise provided for, the parties consent to resolution by arbitration on an individual basis of all claims and controversies arising from or in connection with Plaintiff's application with, employment with, or termination from the Company. Nelson Decl. Ex. 1-B, Mutual Arbitration Agreement, ¶1. The Agreement has an effective date of February 1, 2018. *Id.* Plaintiff was a Brand Marketing Manager for

---

[1] Tinder operates its headquarters out of West Hollywood, Los Angeles.

Tinder from September 6, 2016 until July 13, 2017. Nelson Decl. ¶3. Following the merger of Tinder and Match Group, Inc., Plaintiff became an employee of Defendant, Match Group, LLC. *Id.* Plaintiff remained an employee of Defendant until her termination on March 1, 2018. Plaintiff was issued a Form W-2 for 2017 which indicated Plaintiff's employer was Match Group, LLC. Nelson Decl. Ex. 1-A. Plaintiff argues in opposition of the motion that this dispute predates the Agreement's effective date. Plaintiff also argues that the Agreement is unconscionable. Defendant filed a reply.

## II.  LEGAL STANDARD

### A. Remand

Federal courts are courts of limited jurisdiction and possess only that jurisdiction as authorized by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1441(a), a party may remove a civil action brought in a State court to a district court only if the plaintiff could have originally filed the action in federal court. Thus, removal is only proper if the district court has original jurisdiction over the issues alleged in the state court complaint. There is a strong presumption that the Court is without jurisdiction until affirmatively proven otherwise. *See Fifty Assocs. v. Prudential Ins. Co. of America*, 446 F.2d 1187, 1190 (9th Cir. 1970). When an action is removed from state court, the removing party bears the burden of demonstrating that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Under the diversity statute, 28 U.S.C. § 1332, a federal district court has original jurisdiction when the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the diversity and amount in controversy requirements are satisfied and if none of the defendants are citizens of the forum state. There is a similarly strong presumption against removal jurisdiction. This presumption "means that the defendant always has the burden of

establishing that removal is proper." *Gaus*, 980 F.2d at 566.

### B. Compel Arbitration

The Federal Arbitration Act ("FAA") applies to "a contract evidencing a transaction involving commerce." 9 U.S.C. §2. Any arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable," and a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may file a petition in the district court for an order compelling arbitration. 9 U.S.C. §§ 2, 4. "[U]pon being satisfied that the making of the agreement for arbitration [] is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citation omitted).

The court's role in resolving a motion to compel arbitration under the FAA is limited to determining (1) whether there is a valid agreement to arbitrate, and (2) whether the dispute falls within the scope of the agreement. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991). The movant bears the burden of proving these elements, while the opponent bears the burden of establishing any defense to enforceability. "[I]ssues concerning the validity, revocability, and enforceability of contracts generally" are governed by state law. *Perry v. Thomas*, 482 U.S. 483, 493 (1987). The FAA evinces a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1985).

///

## III. DISCUSSION

The parties present two issues for the Court's consideration. First, the Court must determine whether it has diversity jurisdiction; thus, making remand improper. Only after determining that the requirements of diversity jurisdiction have been met may the Court examine the scope and validity of the arbitration agreement.

### A. Diversity Jurisdiction

Plaintiff argues that the parties are both citizens of the state of California and, accordingly, there is no diversity of citizenship as required by 28 U.S.C. § 1332. Plaintiff asserts that for the purposes of this lawsuit, she is suing Tinder, headquartered in West Hollywood, Los Angeles. Defendant argues that Tinder was merged into Match Group, LLC, a Delaware corporation with its principal place of business and corporate headquarters in Texas. This merger, Defendant asserts, establishes complete diversity between Plaintiff and Defendant. Plaintiff does not contest Defendant's allegations regarding amount in controversy; thus, the Court need not engage in an inquiry of Defendant's notice of removal. *See Ibarra v. Manheim Investments, Inc.*, 775 F. 3d 1193 (9th Cir. 2015).

#### 1. The Proper Parties to the Suit Have Diversity of Citizenship

Plaintiff's attempt to defeat diversity of citizenship requires the Court to determine that Tinder is the proper party to this suit. Plaintiff argues that Tinder is a dissolved corporation rather than a corporation that has merged into Match Group, LLC. This is contrary to the facts before the Court.

First, the Certificate of Ownership and Merger which merged Tinder with Match states that "[Match Group, Inc.] shall be the surviving corporation of the Merger and shall continue under the name 'Match Group, Inc.'". Braddock Decl. Ex. 1-A. p. 5. Under the terms of the merger, Tinder became an unincorporated division of Match pursuant to the July 13, 2017 merger. Braddock Decl., ¶7. Tinder was a subsidiary of Match Group, Inc. from the beginning of Plaintiff's employment until July 13, 2017. Braddock Decl., ¶5. As part of the merger, Match Group, Inc.

assigned all of Tinder's assets and liability to one of Match Group, Inc.'s subsidiaries, Match.com, L.L.C. Braddock Decl., ¶6. Shortly thereafter, Match.com, L.L.C. adopted the name Match Group, LLC. Mot. to Remand ¶5. Defendant, Match Group, LLC is currently the assignee of Tinder's assets and liabilities. *Id.* ¶6. Further, the Contribution Agreement between Match Group, Inc and Match.com, L.L.C. indicates that "after the First Merger, Tinder, Inc. a Delaware Corporation [] merged with and into [Defendant], with [Defendant] surviving such merger." Braddock Decl. Ex. 1-B.

After the merger, Tinder employees, including Plaintiff, were notified of their change of employer and were issued W-2 tax forms for 2017 that indicated that Match Group, Inc. was their new employer. Nelson Decl. Ex. 1-A.

From these facts it is apparent that Tinder merged into Defendant Match Group, Inc. Where an entity undergoes merger, the merged corporation ceases to exist independently and cannot be subject to lawsuit. *See e.g.*, Del. Code Ann. tit. 8, § 251 (providing that a merger occurs when two corporations merge into a single surviving corporation); Cal.Corp.Code § 1107 (a) (providing that the merging corporation ceases to exist and the surviving corporation "shall succeed . . . to all the rights and property of each of the disappearing corporations and shall be subject to all the debts and liabilities of each in the same manner as if the surviving corporation had itself incurred them."); *Meadows v. Bicrodyne Corp.*, 785 F.2d 670 (9th Cir. 1986) (determining that under California, a merged corporation no longer existed and was, therefore, not a proper party or relevant with respect to the diversity inquiry).

While Plaintiff proclaims that Tinder is merely dissolved, and therefore still the proper party to this suit, nothing supports this assertion. Tinder as an entity no longer exists after its merger into Defendant. As such, the Court will consider Defendant Match Group, Inc.'s citizenship for the purposes of diversity jurisdiction.

For diversity considerations, a corporation is deemed to be a citizen of the state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A limited liability company's citizenship is determined by the

1 citizenship of each member.

2     Plaintiff, an individual, is a citizen of Los Angeles, California. Defendant,
3 Match Group, Inc. is the sole member of Match Group, LLC. Match Group, Inc. is
4 incorporated in Delaware and has its principal place of business and corporate
5 headquarters in Texas. Match Group, LLC is also a Delaware corporation with its
6 principal place of business and corporate headquarters in Texas. Braddock Decl., ¶6.
7 Tinder does not exist as a result of the merger and its citizenship is not relevant for the
8 current inquiry. Defendant is the successor of Tinder's assets and liabilities and the
9 surviving entity resulting from the merger. Thus, complete diversity exists between
10 Plaintiff and Defendant. Because there is complete diversity between the parties,
11 diversity jurisdiction exits. Therefore, the Court will determine whether this suit is
12 bound by the Mutual Arbitration Agreement signed by the parties.

### B. The Mutual Arbitration Agreement

14     Defendant asserts that although this Court has jurisdiction over the case, the
15 parties are bound by a Mutual Arbitration Agreement, which became effective on
16 February 1, 2018. The agreement provides, with limited exceptions that Defendant
17 would use Match Group, Inc.'s Alternative Dispute Resolution Program for California
18 ("ADR Program"). Specifically, the agreement states that "all claims or controversies
19 arising out of or in connection with" Plaintiff's "application with, employment with,
20 or termination from," the Company must be arbitrated on an individual basis. Plaintiff
21 argues that her claims occurred prior to the effective date of the Agreement and that
22 the terms of the Agreement do not apply retroactively. Alternatively, Plaintiff argues
23 that the Agreement is unconscionable.

### 1. The Agreement Applies to Plaintiff's Claims

25     Plaintiff first argues that the Agreement does not apply to this dispute because it
26 arose prior to the effective date. Further, Plaintiff asserts that there is nothing on the
27 face of the Agreement that requires it to be applied retroactively.
28     As a general matter, "any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration," even if "the problem at hand is the construction of the contract language itself." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927 (1983). Here, the operative language of the Agreement asserts that arbitration will be used for all claims or controversies "arising out of or in connection with [Plaintiff's] application with, employment with, or termination from the Company". Few claims are excluded from arbitration, but they are of no moment to the issues here.[2]

        Plaintiff argues that this operative language is like that at issue in *Castro v. ABM Indus., Inc.*, 2018 WL 2197527 (N.D. Cal May 14, 2018). In *Castro*, the Northern District of California considered whether the language of collective bargaining agreements ("CBAs") required arbitration where defendant did not notify plaintiffs of their intent to compel arbitration until nearly two years after the effective date of the CBAs and three years after the initiation of the litigation. The language at issue in *Castro* required "binding mediation and arbitration" to resolve "all Covered Claims, whenever they arise". *Id.* at *4. Relying on *Morse*, the court disagreed that the word "arise" (as opposed to "arose" or "have arisen") referred to past disputes. *Id.* Accordingly, the court held that the CBAs only applied to present and future disputes. *Id.* Plaintiff argues that the language of the Agreement should be read in a similar fashion.

        To support her point, Plaintiff argues that the terms of the Agreement limits arbitration to disputes that occur after the effective date. Plaintiff alleges sexual harassment that occurred and were reported in mid-2017 and January 2018. Sanfillipo Decl. ¶5. Both these claims precede the Agreement's effective date of February 1, 2018. Accordingly, Plaintiff argues, the Agreement does not apply to Plaintiff's sexual harassment allegations and cannot be arbitrated through the ADR Program.

---

[2] Section 3 of the ADR Program excludes from the Agreement claims for workers' compensation or unemployment compensation benefits; any criminal complaint or related criminal proceeding

Courts in this Circuit are undecided as to whether an arbitration agreement applies retroactively when there is no language that limits the agreement temporally. *Compare Jones v. Déjà vu, Inc.*, 419 F.Supp. 2d 1146, 1150 (N.D. Cal. 2005) (determining that an arbitration provision which dealt with disputes "arising out of this Contract or Performer's performances" was not temporally limited) and *Trujillo v. Gomez*, 2015 WL 1757870 (S.D. Cal. Apr. 17, 2015) (holding that an arbitration clause providing that any "claim or controversy arising out of or relating to this Agreement, the Corporation, or the rights or obligations of the Shareholders as Shareholders, officers, or employees or the Corporation will be settled by binding arbitration" did not include any temporal limitations and could require the parties to arbitrate disputes that occurred prior to the effective date) *with Morse v. ServiceMaster Glob. Holdings Inc.*, 2012 WL 4755035, at *5 (N.D. Cal. Oct. 4, 2012) (denying defendant's motion to compel arbitration of claims that predated the effective date where the parties executed the arbitration agreement *after* a lawsuit was filed and the agreement did not include language that was retroactive on its face because the word arising "makes it clear that it applies to claims that may arise going forward"). The Ninth Circuit has yet to address this issue.

The Agreement here does not appear to intend to limit arbitration to future claims. While Plaintiff cites the Tinder app's Terms of Use as an adequate example of temporally specific language, the Agreement seems to anticipate a broad scope of disputes. Indeed, the addition of "in connection with" after the initial clause "arising out of" seems to extend the scope of the Agreement well beyond present or future disputes. For example, a dispute about Defendant's hiring practices at the time of Plaintiff's initial hiring would most certainly be in connection with Plaintiff's application with Defendant. While those disputes would have occurred prior to the Agreement's effective date, it is unlikely that they are not anticipated nor covered by the explicit language the parties agreed to upon execution. It is difficult to interpret the "in connection with" clause in any other fashion. The Agreement, therefore,

1 applies to all of Plaintiff's claims against Defendant.

### 2. The Agreement is Valid and Enforceable

Alternatively, Plaintiff argues that the Agreement is procedurally and substantively unconscionable. To determine whether an agreement is procedurally unconscionable, courts examine "the manner in which the agreement was negotiated and the circumstances of the parties at the time, focusing on the level of oppression and surprise involved in the agreement." *Romo v. CBRE Group, Inc.*, No. 8:18-CV-00237-JLS (KESx), 2018 WL 4802152 at *7 (C.D. Cal. Oct. 3, 2018) (citing *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013)). "A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract." *Ingle v. Circuit City Store, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003) (internal quotation marks omitted). "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*

When making this determination, the threshold issue is whether the contract is adhesive. Plaintiff argues that the "take it or leave it" nature of the Agreement is indicative of the oppressive nature of the Agreement. The agreement was presented to Plaintiff without negotiation and involved no meaningful choice by Plaintiff. However, this alone is not sufficient to consider the contract unenforceable. *Borgading v. JPMorgan Chase Bank*, No. 16-CV-2485-FMO (RAOx), 206 WL 8904413, at *4 (C.D. Cal. Oct. 31, 2016). Plaintiff was not surprised by the Agreement; the terms of the agreement are explicit and boldface highlights that the Agreement is to arbitrate disputes between Plaintiff and Defendant.

Regarding the substantive prong, Plaintiff argues that the Agreement is substantively unconscionable because it applies retroactively. This argument does not adhere to California law. *See e.g.*, *DeVries v. Experian Info. Sols., Inc.*, Case No. 16-cv-02953-WHO, 2017 WL 733096, at *8 (N.D. Cal. Feb. 24, 2017); *In re Verisign,*

*Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal 2007).  There is nothing to support Plaintiff's claim that the Agreement is unconscionable under California law.  Plaintiff has failed to provide any argument persuading the Court that the Agreement is unenforceable.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand and **GRANTS** Defendant's Motion to Compel Arbitration.  The entire action is hereby **STAYED** and removed from the Court's active caseload until further application by the parties or Order of this Court.

The parties shall **file Joint Status Reports every 120 days** to update the Court on the status of arbitration, and a final Joint Status Report within ten (10) days after the arbitration concludes.  Each report must indicate on the face page the date on which the next report is due.  Although both parties shall participate in the drafting of the joint reports, Defendant shall be responsible for ensuring that the status reports are timely filed with the Court.

The Court retains jurisdiction over this action.

All pending calendar dates are vacated.

**IT IS SO ORDERED.**

Dated:  December 18, 2018

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

11.